**CHRISSY F., By her next friend and Guardian ad litem Donna MEDLEY, Plaintiff–Appellee,**

v.

**MISSISSIPPI DEPARTMENT OF PUBLIC WELFARE, et al., Defendants–Appellants.**

No. 90–1332.

United States Court of Appeals, Fifth Circuit.

March 8, 1991.

---

4. *See Taumby v. U.S.,* 919 F.2d 69, 70 (8th Cir. 1990); *Conn v. United States,* 867 F.2d 916, 920–21 (6th Cir.1989).

James F. Steel, Asst. Atty. Gen., Mike Moore, Atty. Gen., Jackson, Miss., for all defendants-appellants except Douglass.

Thomas D. McNeese, Aultman, Tyner, McNeese & Ruffin, Ltd., Columbia, Miss., for Richard L. Douglass.

Daniel S. Mason, Furth, Fahrner & Mason, Sheila Brogna, Children's Law Offices, San Francisco, Cal., for plaintiff-appellee.

Before RUBIN, JOHNSON, and BARKSDALE, Circuit Judges:

ALVIN B. RUBIN, Circuit Judge:

An eight-year-old child seeks injunctive and declaratory relief against two judges, a state district attorney, and various state and county welfare departments and their employees, as well as damages from the district attorney and the welfare department employees, alleging that each of them in various ways failed to report, investigate, or take any action in response to repeated reports that she had been sexually abused by her father. All of the defendants appeal the district court's denial of their motions to dismiss, and the district attorney also appeals denial of his motion for summary judgment, on the grounds of Eleventh Amendment immunity and absolute and qualified personal immunities. If the allegations of the complaint are proved, the state-official defendants violated at least some of Chrissy's clearly established constitutional rights, and we therefore affirm the denial of the motion to dismiss insofar as it seeks damages from those officials. We affirm the denial of the district attorney's motion for summary judgment because the district court correctly held that there are genuine disputes of material fact and that, if Chrissy's allegations are proved, the district attorney would be liable for some of his actions in his individual capacity. Lacking jurisdiction, we refuse to consider the arguments: (1) that the complaint fails to state a claim for which relief could be granted because the district court's denial of the motion to

dismiss on that ground is interlocutory and not appealable; and (2) that the district court should have granted the defendants immunity from declaratory and injunctive relief.

## I.

■ These are but a few of the facts well pleaded in the 81–page complaint. On review of a district court's denial of dismissal for failure to state a claim for which relief can be granted, we must accept as true all well-pleaded facts. The complaint is not subject to dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [1] The same rule applies when immunity is urged as a defense by a motion to dismiss.[2]

In August 1984, Dorrie Singley, the mother of Chrissy F., who was then two years old, initiated divorce proceedings in the Chancery Court of Marion County against her husband, Chrissy's father, Timothy Foxworth, because she had allegedly seen Foxworth sexually molesting their daughter. Chancellor Sebe Dale awarded custody of Chrissy to her mother and gave Foxworth visitation rights. Shortly thereafter, Chrissy resisted visits with Foxworth and began complaining of genital pain. Singley took her to a hospital emergency room, where Dr. William Bradford found symptoms consistent with sexual molestation and filed a Report of Suspected Battered Child (DPW–440) with the Hancock County Welfare Department (HCWD). Bridget Logan, a social worker at HCWD, referred Chrissy to Dr. R. Bryant McCrary, who after examining her filed a DPW–440 with the Mississippi Department of Public Welfare (MDPW), stating that Chrissy's symptoms were "very suspicious of child abuse." Social Worker Logan telephoned Chancellor Dale and informed him of Dr. McCrary's report and recommendations. Chancellor Dale, however, refused to take any action or to dismiss the Chancery Court proceedings and forward all relevant documents to the Youth Court as required by the Mississippi Youth Court Law whenever an abused child is involved.[3] Neither HCWD nor MDPW further investigated the medical reports or referred the matter to the Hancock County Youth Court, the Youth Court Prosecutor, or the District Attorney.

A Hancock County Assistant District Attorney interviewed Chrissy in November 1986, and wrote to the District Attorney of Marion County Richard Douglass, urging him to prosecute Foxworth for abusing Chrissy. Singley had twice previously sought assistance from D.A. Douglass, but he had neither reported the matter to MDPW nor conducted any further investigation into the allegations of abuse. Although he received copies of the doctors' reports in November 1986, D.A. Douglass again failed to report or investigate the matter.

In December 1986, Foxworth filed a petition for modification of custody; Singley brought countercharges of abuse. In August 1987, Chancellor Dale awarded Foxworth paramount custody of Chrissy, finding that Singley's lifestyle subjected Chrissy to detrimental influences and that there was "no credible evidence that Chrissy [had] been sexually abused." Shortly thereafter, Dr. Rebecca Russell at Children's Hospital in New Orleans performed a colposcopic examination on Chrissy, which yielded conclusive evidence of sexual molestation. Dr. Sylvia Strickland, a leading expert in the field, later reviewed the films taken of Chrissy and confirmed Dr. Russell's findings. Chancellor Dale, however, denied a motion for a new trial based on these findings. Singley met with D.A. Douglass once again and sent him Dr. Russell's report, but he neither investigated the matter nor reported it to MDPW or the

1. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

2. *Holloway v. Walker*, 765 F.2d 517, 519 (5th Cir.), *cert. denied* 474 U.S. 1037, 106 S.Ct. 605, 88 L.Ed.2d 583 (1985).

3. Miss.Code Ann. § 43–21–159 (1972 & Supp. 1990).

Youth Court, as required by the Mississippi Youth Court Law.[4]

On August 27, Singley filed a motion to reopen the custody hearing in Chancery Court, a second motion seeking appointment of a guardian *ad litem* for Chrissy, and a motion to recuse Chancellor Dale. None of these motions was acted upon. Instead, Chancellor Dale found Singley in contempt of court for failing to return Chrissy to her father's custody. Singley thereupon placed Chrissy in the care of friends and went into hiding.

Singley's attorney filed a Certificate of Appeal from the child-custody ruling in the Mississippi Supreme Court. She also wrote to Chancellor Dale, requesting that, to perfect the appeal, he sign an order ruling on the August 27 motions, but Dale never did so.

Two months later Singley died of a brain aneurysm. In November, Chancellor Dale denied Singley's lawyer's motion to substitute Singley's grandmother as her representative in her appeal and the appeal was dismissed.

In December, the family who had been taking care of Chrissy took her to California where they presented evidence of molestation to the San Francisco Department of Social Services (DSS) and the California Court for the County of San Francisco. A court-appointed psychiatrist reported that Chrissy had recounted incidents of sexual molestation by her father. The California Court issued a detention order and placed Chrissy in the temporary custody of DSS in the home of Donna Medley. Subsequently, the California Court decided to permit Chrissy's return to Mississippi with the following conditions: 1) she be placed in a neutral and stable setting, not with any maternal or paternal relatives; 2) she be physically and psychologically evaluated and all treatment recommendations be followed; 3) a qualified attorney be appointed her guardian *ad litem;* 4) a petition for proceeding in the Mississippi Youth Court be filed by MDPW before Chrissy's return to Mississippi; and 5) Chrissy have no contact with her father until so ordered by the Mississippi Court. Both Chancellor Dale and Thomas H. Brittain, the MDPW Commissioner, agreed to these conditions. Chancellor Dale entered an order which held the earlier Chancery Court award of custody to Foxworth "in abeyance" until the Mississippi Youth Court concluded its proceedings.

In accordance with what he contends was an order of Chancellor Dale, D.A. Douglass appeared at the California Court hearing, assured the Court that he would comply with its conditions, assumed temporary custody of Chrissy, and brought her back to Mississippi where she spent the night at Douglass's home. She was visited there by her paternal grandmother and aunt and her father, all with Douglass's approval, despite the express condition of the California court order, agreed to by Chancellor Dale, that she have no contact with her father until a court order permitted it.

The following day, Chancellor Dale ordered evaluations of Chrissy by a doctor and psychiatrist, both of whom had previously examined her and decided that she had not been abused. Chancellor Dale also ordered that Chrissy be placed in the home of her paternal grandmother, to which her father had unlimited access. Neither the Youth Court, any guardian *ad litem,* nor the California court was notified, nor were these orders made in the course of a judicial proceeding.

Meanwhile, the County Attorney and Youth Court Prosecutor had filed a petition in the Youth Court for temporary custody of Chrissy. Youth Court Referee Garland Upton thereupon appointed two guardians *ad litem* and ordered that MDPW assume temporary custody of Chrissy. On December 30, Upton presided over a hearing regarding Chrissy. Neither Chrissy's guardians *ad litem,* D.A. Douglass, MDPW, nor Chancellor Dale introduced into evidence any of the medical reports substantiating the charges that Chrissy had been abused. Based on evidence presented by the County Attorney, who is charged with prosecuting

4. *Id.* at § 43–21–353.

Youth Court proceedings,[5] the Youth Court recommended that Chrissy remain in the legal custody of her father, but cared for on a daily basis by her paternal grandmother. The next day Chancellor Dale reaffirmed his prior order awarding custody to Foxworth.

Donna Medley, as Chrissy's guardian *ad litem,* sued D.A. Douglass, Chancellor Dale, Referee Upton, the guardians *ad litem* appointed by Referee Upton, MDPW and Commissioner Brittain, the Marion and Hancock County Welfare Departments, and several social workers and supervisors employed by those departments, seeking damages from some of the defendants and injunctive relief for violation of Chrissy's rights: to meaningful access to the courts; to freedom from denial of her liberty in violation of the Fourteenth Amendment; to the procedural due process of law guaranteed by the Fourteenth Amendment prior to deprivation of entitlements guaranteed by the Mississippi Youth Court Law;[6] and to statutory protections under Titles IV and XX of the Social Security Act[7] and the Child Abuse Prevention and Treatment Act of 1974.[8] Chrissy included in her complaint a prayer for declaratory relief and asserted pendent state-law claims for negligence and violation of state statutes. The district court dismissed the suit under F.R.C.P. 12(b)(1), finding that the complaint was "inextricably intertwined" with the state court judgment. We reversed and remanded, directing the district court to conduct a hearing for the purpose of appointing a guardian *ad litem* for Chrissy.[9] The district court thereupon appointed Medley as Chrissy's next friend.

After discovery, all of the defendants filed motions to dismiss on various grounds, including sovereign immunity and absolute and qualified immunity, and D.A. Douglass also filed a motion for summary judgment. The district court held that the Eleventh Amendment rendered the state and all of the individual defendants immune to damages in their official capacities and the guardians *ad litem* entitled to absolute immunity, but rejected the claims of D.A. Douglass for absolute immunity and the other state defendants for qualified immunity from damages. The defendants appeal the district court's denial of their motion to dismiss the complaint for failure to state a claim for which relief can be granted and the denial of those immunity claims rejected by the district court.

## II.

Ordinarily, only final judgments and a few specific interlocutory rulings are appealable. The court of appeals therefore lacks jurisdiction of an appeal from an interlocutory order such as one rejecting an asserted defense. In *Mitchell v. Forsyth*[10] and *Nixon v. Fitzgerald,*[11] the Supreme Court held, however, that an appellate court may review immediately the denial of a claim of either qualified or absolute immunity from damages as a final order under 28 U.S.C. § 1291.[12] "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."[13] The Court stressed that a claim of immunity from damages "is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated. An appellate court reviewing the denial of the defendant's claim of immunity need not ... determine whether the plaintiff's alle-

---

**5.** Miss.Code Ann. § 43–21–117 (1972).

**6.** Miss.Code Ann. §§ 43–21–101 *et seq.* (1972 & Supp.1990).

**7.** 42 U.S.C. §§ 620 *et seq.* (1988).

**8.** 42 U.S.C. §§ 5101 *et seq.* (1988).

**9.** *Chrissy F. By Medley v. Mississippi Dept. of Public Welfare,* 883 F.2d 25 (5th Cir.1989).

**10.** 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

**11.** 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982).

**12.** *Id.* at 742–43, 102 S.Ct. at 2697; *Mitchell,* 472 U.S. at 525–27; 105 S.Ct. at 2815–16.

**13.** *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815, citing *Harlow v. Fitzgerald,* 457 U.S. 800 at 818, 102 S.Ct. 2727 at 2738, 73 L.Ed.2d 396.

gations actually state a claim," [14] but only whether the acts allegedly performed by the defendant violated clearly established law. This court therefore has jurisdiction to review the denial of the defendants' claims of personal immunity from damages, but lacks jurisdiction to review the district court's denial of defendants' motion to dismiss for failure to state a claim.

■ The denial of Eleventh Amendment immunity to damage claims is immediately appealable for the same reasons justifying review of the denial of personal immunity.[15]

■ Chrissy also seeks declaratory and injunctive relief. Neither absolute nor qualified personal immunity extends to suits for injunctive or declaratory relief under § 1983.[16] We review therefore only the denial of various claims of immunity from damages.

Whether the Child Abuse Prevention and Treatment Act [17] or Titles IV and XX of the Social Security Act [18] authorize a private cause of action for the failure of a state official to report known or suspected instances of child abuse and neglect [19] and whether the complaint states a claim under 42 U.S.C. § 1982 or § 1985(3) are not issues in this appeal. We express no opinion concerning those questions.

### III.

■ The Eleventh Amendment bars claims for damages not only when the claim is directed against the state but also when the claimant seeks damages from the State's officers in their official capacities and the damages would be paid out of the state treasury. In her brief on appeal, Chrissy asserts that the only defendant she

is suing in his official capacity for damages is D.A. Douglass. Chrissy concedes, however, that if the District Attorney in Mississippi is a state, rather than local, official, he is entitled to Eleventh Amendment immunity in his official capacity. In Mississippi, the district attorney's office is primarily state-funded.[20] Mississippi law extends the scope of the district attorney's authority to statewide concerns: the district attorney has the power to represent the state in all judicial proceedings,[21] even after a change in venue.[22] Chrissy has cited no provision of Mississippi law and adduced no evidence that a district attorney is a local official. We therefore conclude that the Mississippi District Attorney is a state official.

The district court did not enter judgment specifically dismissing Douglass in his official capacity, but its judgment states that any retrospective relief sought against "the State defendants" in their official capacities is barred by the Eleventh Amendment, and we construe this to include any claim against Douglass in his official capacity for damages. Thus construing the judgment, we affirm that portion of it.

### IV.

Although the suit names numerous defendants, Chrissy seeks only injunctive and declaratory relief against the majority. The only individual damage claims Chrissy asserts are against D.A. Douglass and four Welfare Department employees: 1) MDPW Commissioner Brittain for his failure to comply with the conditions imposed by order of the California Court, failure to investigate further the report of Dr. McCrary, failure to report the matter to the Youth Court or the District Attorney, and failure

---

14. *Mitchell,* 472 U.S. at 527–28, 105 S.Ct. at 2816.

15. *Loya v. Texas Dept. of Corrections,* 878 F.2d 860, 861 (5th Cir.1989).

16. *Pulliam v. Allen,* 466 U.S. 522, 541–42, 104 S.Ct. 1970, 1981, 80 L.Ed.2d 565 (1984); *Supreme Court of Virginia v. Consumers Union, Inc.,* 446 U.S. 719, 736, 100 S.Ct. 1967, 1977, 64 L.Ed.2d 641 (1980); *Minton v. St. Bernard Parish School Bd.,* 803 F.2d 129, 134 (5th Cir.1986); *Holloway,* 765 F.2d at 525.

17. 42 U.S.C. §§ 5101 *et seq.* (1988).

18. 42 U.S.C. §§ 620 *et seq.* (1988).

19. 42 U.S.C. § 5105(b) (1988).

20. Miss.Code Ann. § 25-31-33 (Supp.1990).

21. *Id.* at § 25-31-11(1).

22. *Daumer v. State,* 381 So.2d 1014 (Miss.1980).

to take any other steps to protect Chrissy from abuse; 2) Marion County Welfare Department Supervisor Sharon Whitt for her failure to comply with the California Court's order, failure to investigate or report the allegations of abuse, and failure to take any other steps to protect Chrissy from abuse; 3) Marion County Welfare Department Social Worker Angela Lacy for the same actions, and her knowing preparation for the Youth Court hearing of a report that omitted all references to plausible evidence of abuse; and 4) HCWD Supervisor Jeanette Werbley for her failure to investigate further the reports of Drs. Bradford, McCrary, and Russell, failure to report the matter to MDPW, the Youth Court, or the District Attorney, and failure to take any other steps to protect Chrissy from further abuse.

■ While the Eleventh Amendment does not bar damage suits against state officials in their individual capacities,[23] the officials may be protected from personal liability by common law immunities. As District Attorney Douglass is entitled to absolute immunity from suit for damages under § 1983 for actions taken as part of his prosecutorial function "in initiating a prosecution and in presenting the State's case."[24] The same common-law immunity also bars liability for claims that relate to his prosecutorial conduct. A prosecutor is entitled to absolute immunity for "quasi-judicial conduct,"[25] including the decision whether to file criminal charges.[26] A prosecutor is not shielded by absolute immuni-

ty, however, for all actions taken in his official capacity. For "administrative or investigatory functions that are not an integral part of the judicial process," he is entitled only to the qualified immunity generally available to government officials.[27] Government officials are shielded by qualified immunity from liability for damages under § 1983 so long, but only so long, as their conduct has not violated "clearly established statutory or constitutional rights of which a reasonable person would have known"[28] at the time of the actions.[29]

■ Chrissy alleges that Douglass injured her by repeatedly failing to report the charge that she had been abused to MPDW as specifically required by the Youth Court Law,[30] failing to initiate an investigation into her abuse, failing to disclose medical reports of her abuse at the Youth Court, allowing her father to have physical contact with her upon her return from California in violation of the California Court's order, and other extra-prosecutorial acts. Based on our holding in *Ryland v. Shapiro*,[31] the district court correctly found that D.A. Douglass was not entitled to absolute immunity for his extra-prosecutorial acts that interfered with Chrissy's fundamental right of meaningful access to the Youth Courts. While absolute immunity shields the District Attorney from liability for his decision not to prosecute Foxworth, it does not protect him from liability for failure to comply with his obligation to report allegations of abuse to

**23.** *Scheuer v. Rhodes,* 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974).

**24.** *Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976).

**25.** *Marrero v. Hialeah,* 625 F.2d 499, 510 (5th Cir.1980).

**26.** *Oliver v. Collins,* 904 F.2d 278, 281 (5th Cir. 1990).

**27.** *Rykers v. Alford,* 832 F.2d 895, 897 (5th Cir. 1987).

**28.** *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

**29.** *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987);

*Pfannstiel v. City of Marion,* 918 F.2d 1178 (5th Cir.1990).

**30.** § 43–21–353. Duty to inform the court. (1) Any attorney, ... social worker, ... law enforcement officer, or any other person having reasonable cause to suspect that a child ... [is] an abused child, shall cause an oral report to be made immediately by telephone or otherwise and followed as soon thereafter as possible by a report in writing to the Department of Public Welfare, and immediately a referral shall be made by the Department of Public Welfare to the intake unit and where appropriate to the youth court prosecutor. Miss.Code Ann. (1972 & Supp.1990).

**31.** 708 F.2d 967 (5th Cir.1983).

the Youth Court, which, while part of his official duties, is not strictly a "prosecutorial" function. Nor does Douglass's contention that his actions upon Chrissy's return from California were done pursuant to court order gain him the shield of absolute immunity. While judicial officers acting pursuant to court directives have often been protected by absolute immunity,[32] we can discern no such court order in the record before us.

■■■ The district court also found that Chrissy's allegations sufficed to charge that both D.A. Douglass and the Welfare Department employees had violated her clearly established right to meaningful access to the courts by failing to report or investigate her allegations of abuse and that therefore neither was entitled to qualified immunity. While denial of the general defense of failure to state a claim is not appealable, we necessarily review the specific parts of the complaint to determine whether they charge conduct violating clearly established federal rights, for the burden of negating that defense is on the plaintiff.[33]

The alleged acts of the defendants from whom damages are sought would, if proved, constitute a violation of Chrissy's clearly established right to access to the Mississippi Youth Court. Meaningful access to the courts is a fundamental constitutional right, grounded in the First Amendment right to petition[34] and the Fifth and Fourteenth Amendment due process clauses.[35] In *Ryland v. Shapiro*,[36] we found suppression of relevant evidence from the appropriate investigative authorities to constitute denial of meaningful ac-

cess to the courts. Similarly, D.A. Douglass's and the Welfare Department employees' alleged failure to report allegations that Chrissy had been abused effectively blocked her access to the Youth Court.

In her complaint, Chrissy also alleges violation of a clearly established Fourteenth Amendment right to protection from the deprivation of her liberty interest in not being abused. The nature of the liberty interest safeguarded by the Fourteenth Amendment, like that of the property interest, is defined at least in part by state law.[37] Chrissy's claim is not, therefore, merely one for enforcement of state law but for the enforcement of a federal constitutional right even though the protected liberty right is defined by state law. Since the relief sought in that part of the district court order now appealed is solely for damages from named individuals in their personal capacities, the claims are not barred by the Supreme Court decision in *Pennhurst State School & Hospital v. Halderman*[38] which held only that, in a suit for an injunction, "a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when ... the relief sought and ordered has an impact directly on the State itself."[39]

In *Taylor by and through Walker v. Ledbetter*[40] the Eleventh Circuit, sitting en banc, held that a child involuntarily placed in a foster home had stated a claim for the denial of both substantive and procedural due process. It based the substantive due process ruling on the existence of a duty owed to the child by the defendant state officials and the procedural due process ruling on a "sufficiently vested claim of

---

**32.** *Lockhart v. Hoenstine,* 411 F.2d 455, 460 (3d Cir.1969).

**33.** *Stem v. Ahearn,* 908 F.2d 1, 5–6 (5th Cir. 1990).

**34.** *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *Wilson v. Thompson,* 593 F.2d 1375 (5th Cir.1979).

**35.** *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Mitchum v. Purvis,* 650 F.2d 647 (5th Cir.1981).

**36.** 708 F.2d at 967.

**37.** *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Paul v. Davis,* 424 U.S. 693, 710–11, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976); *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983).

**38.** 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67.

**39.** *Pennhurst,* 465 U.S. at 117, 104 S.Ct. at 917.

**40.** 818 F.2d 791 (11th Cir.1987) (en banc).

entitlement" created by "the statutes and regulations of the state of Georgia."[41]

The Supreme Court's later decision in *DeShaney v. Winnebago County Dep't of Soc. Serv.*[42] held that the substantive component of the Due Process Clause of the Fourteenth Amendment does not of its own force require the state to protect life, liberty, and property against invasion by private actors[43] and confers no affirmative right to governmental aid.[44] The Court noted in *DeShaney* that it would not decide whether the state's child-protection statutes created "an entitlement which would enjoy due process protection against state deprivation" because that issue was raised for the first time in the petitioner's brief to the Court.[45]

Chrissy charges that the Mississippi statutes created a protected liberty interest. These statutes include provisions that: the Youth Court has "exclusive original jurisdiction in all proceedings concerning ... an abused child";[46] any attorney, physician, social worker, or law enforcement officer or any other person having reasonable cause to suspect that a child is abused must report orally and in writing to MDPW;[47] MDPW shall immediately refer reports of suspected child abuse to the intake unit of the Youth Court;[48] the intake unit must then promptly make a preliminary inquiry, require MDPW to investigate in depth,[49] and decide whether to recommend that the Youth Court take further steps to protect the child;[50] in every case involving an abused child which results in a judicial proceeding, the Youth Court must appoint a guardian *ad litem* for the child.[51]

The district court did not rule on the due-process claims, there is no Fifth Circuit authority directly on them, and the parties have not fully briefed them on appeal. We therefore intimate no opinion at this time with regard to their merit.

Defendants contend that our recent decision in *Stem v. Ahearn*[52] mandates that, as government employees, they are immune from liability in the present case. In *Stem*, we held that social workers who had petitioned for temporary cessation of a father's visitation rights upon allegations of abuse were entitled to qualified immunity because they had not violated any clearly established law and took action only after the father had been accorded full procedural due process. We did not hold that social workers who, as in this case, allegedly violated clearly delineated federal rights would nonetheless be immune from liability.

*DeShaney* also creates no precedent with regard to qualified immunity. The court found it unnecessary to consider whether the individual state officials were entitled to a qualified immunity defense because it was denying relief on the merits.[53]

The district court denied Douglass's motion for summary judgment because there were genuine disputes of material facts. Douglass does not contest that conclusion, and, in any event, we agree with it.

For the foregoing reasons, we AFFIRM the district court's judgment denying D.A. Douglass immunity from damages in his individual capacity, save as to actions taken in his prosecutorial role, and denying individual immunity to the Welfare Department employees.

---

**41.** *Id.* at 798.

**42.** 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

**43.** *DeShaney*, 489 U.S. at 195, 109 S.Ct. at 1003.

**44.** *Id.*

**45.** 489 U.S. at 195, n. 2, 109 S.Ct. at 1003, n. 2.

**46.** Miss.Code Ann. § 43–21–151(1) (1972 & Supp.1990).

**47.** *Id.* at § 43–21–353.

**48.** *Id.*

**49.** *Id.*

**50.** *Id.* at § 43–21–357.

**51.** *Id.* at § 43–21–121(1)(e).

**52.** 908 F.2d at 1.

**53.** *DeShaney*, 489 U.S. at 202, n. 10, 109 S.Ct. 1007, n. 10.