Dorothy LaBARBERA; Dr. Phillip LaBarbera; and the Estate of Brian LaBarbera

v.

Dan ANGEL, in His Official Capacity as President of SFASU; Pete Winder of Winder's Sales and Services; Baker Pattillo, Vice President, SFASU; John Pearce; Steve Cooper; Eric Newell, Nacogdoches P.D.; Diana Boubel, Purchasing Director SFASU; Jim Rader, House Cleaning, SFASU; William Lujan, Nacogdoches P.D.; Larry W. Bailey, Assistant Director Purchasing, SFASU; and Evie Le-Blanc Jones, Central Stores, SFASU

No. CIV. A. 9:99–CV–94.

United States District Court,
E.D. Texas,
Lufkin Division.

March 1, 2000.

under title 15 of the United States Code, or

valid at common law.

Jeralyn Lee (Jackee) Cox, Nacogdoches, TX, for Plaintiff.

Robert Brian O'Keefe, Attorney General's Office, General Litigation Division, Austin, TX, for Defendant SFASU.

Claydon Edward Dark, Jr., Lufkin, TX, for Defendants Winder.

## MEMORANDUM OPINION

COBB, District Judge.

Before this Court are the Defendants' Motions to Dismiss for Failure to state a claim. For the reasons stated below, this Court grants defendants' motions and dis-

misses the case pursuant to Fed. Rule Civ. P.12(b)(6).

Besides John Pearce and Winder's Inc., the defendants fall into two main groups: the University Defendants (which includes Baker Patillo, Diana Boubel, Larry Bailey, and Evie Jones) and the Police Defendants (including Pete Winder, Steve Cooper, Eric Newell and William Lujan). The defendants are sued in their individual capacities only except for Dan Angel and Robert Smith who are sued in their official capacities as president of Stephen F. Austin State University.(SFASU).[1]

## I. BACKGROUND

On May 4, 1997, John Pearce and his wife were involved in an accident with plaintiffs' son Brian LaBarbera. Brian LaBarbera was riding a motorcycle when he collided with Pearce's car and died as a result of the injuries he sustained. John Pearce was the head football coach at SFASU. Plaintiffs allege the Nacogdoches Police officers engaged in a cover-up to protect Pearce and blame Brian LaBarbera for the accident. Plaintiffs also allege that SFASU officials were engaged in an ongoing scheme to bribe Pete Winder, Captain of the Patrol Division of the Nacogdoches Police Department, in order to secure corrupt influence over the Police Department. The cover-up was a direct result of this influence. Specifically, plaintiffs allege that SFASU illegally awarded Winder's company, Winder's Sales and Services, a contract to provide cleaning supplies to SFASU and then increased the payments under the contract after the accident.

### A. The Bid Process

Patillo, Rader and Boubel allegedly conspired to prepare bid specifications which only Winder and Winder's Inc. could meet. This was allegedly done with the intent to provide Patillo and SFASU corrupt influ-

ence over the Nacogdoches Police Department. (Second Amended complaint, p. 12) Rader and Boubel prepared the "Request for Proposal" (RFP) which had stringent requirements allegedly designed to favor a Nacogdoches vendor. Those requirements included one day deadlines for the delivery or repair and replacement and on-site training for SFASU employees. (Second Amended Complaint, p. 14). This was done without a written justification for the restrictive provisions as required by § 2155.067 TEX. GOV'T CODE (Vernon 1994). Winder's bid was faxed and accepted after the stated deadline. Boubel then prepared a bid analysis which rejected the other bids because they used substandard cleaners despite the fact that Winder's bid used similar cleaners.

### B. The Accident and Cover Up of Evidence

Cooper and Newell were the officers who first arrived at the scene of the accident. Cooper put Newell (a rookie cop) in charge of the investigation. Plaintiffs allege they recklessly failed to preserve relevant evidence at the scene by not interviewing certain witnesses and failing to record relevant physical evidence. They then rode with the ambulance to Nacogdoches Medical Center Hospital.

At the hospital, Patillo met with Dr. Donald Cagle (Pearce's personal physician) and Police officers Cooper and Newell. Plaintiffs allege it was agreed and understood that Cooper and Newell "would protect the interests of Coach Pearce and his wife, Jamie Pearce, with regard to evidence as to their culpability for the accident." (Second Amended Complaint, p. 17). Dr. Cagle then cancelled Mrs. Pearce's blood-alcohol tests in violation of emergency room protocols and Police Department policy. Plaintiffs allege that it was then agreed between Cooper, Newell,

---

**1.** During the course of this litigation, Robert Smith replaced Dan Angel as president of the University.

Patillo and Pearce, that a false accident report would be filed. That evening Cooper and Newell made statements to the press indicating that Brian LaBarbera was at fault. Newell then prepared an accident report indicating Brian LaBarbera was at fault and that Pearce took evasive action.

### C. Subsequent Payments to Winder and Continued Cover Up

The day after the accident, Winder was granted substantial increases under the SFASU contract for house cleaning supplies. Boubel, Rader, and Patillo issued two purchase orders which substantially increased the value of the contract. Between April 24, 1997 (the date the contract was awarded) and August 22, 1997 the contract was amended at least four times.[2] Plaintiffs further allege that on two occasions (September 12, 1997 and August 14, 1998) Bailey, at the direction and control of Patillo, Rader, and Boubel, renewed and extended the purchase order. On October 18, 1998, Bailey also entered a change order which retroactively increased the authorized dollar value of purchases for the fiscal year ending in August, 1998. On May 18, 1998, Jones, acting under the direction of Patillo and Rader, authorized the renewal and extension of the standing purchase order for the 1999 fiscal year. Jones also supervised Bailey.

Captain Winder took control of the investigation the day after the accident. He then allegedly caused a second accident report to be prepared in which a witness stated LaBarbera was speeding despite the fact that the witness had not yet been interviewed. He is also alleged to have allowed evidence to be destroyed by not preserving physical evidence such as skid marks, and not investigating medical records and traffic light sequencing.

Plaintiffs further allege Cooper, Newell, and William Lujan (Assistant Chief of Police) refused to accept potentially exculpatory evidence from Mrs. LaBarbera and other sources. These alleged acts hindered a subsequent investigation by the Texas Department of Public Safety as well as a private investigation. From this the plaintiffs conclude that "Cooper and Newell 'made up' the part of the accident report suggesting Pearce took evasive action, and included other information that was not obtained from anyone who actually witnessed the accident," and that Winder and Lujan collaborated in the preservation of this fiction. (Plaintiff's Qualified Immunity Response, p. 4).

Plaintiffs assert three claims. First, they seek civil damages under the Racketeer Influenced and Corrupt Organization Act (RICO) 18 U.S.C. § 1961 *et seq.,* specifically, 18 U.S.C. § 1964(c) (1984 Supp.). They also assert a cause of action under 42 U.S.C. § 1983 claiming the Police and University Defendants violated their constitutional rights and engaged in a conspiracy to do so. Finally, plaintiffs assert a claim for intentional infliction of emotional distress. Defendants from the police department moved for dismissal under Rule 12(b)(6) and asserted qualified immunity as a defense. Later, the University Defendants moved for dismissal under the same rule.

## II. STANDARD FOR DISMISSAL

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief

---

**2.** As evidence, plaintiffs provide several SFASU purchasing orders which were issued to Winder's company.(Plaintiffs' exhibits 11–16). All refer to the same standing order (No. 700109) and each is signed by Diana Boubel. The first is dated May 5, 1997, and is in amount of $23,797.50. The second is dated June 18, 1997 and reflects a total amount of $24,165.75. The third is dated July, 28, 1997 and is in the amount of $27,278.65. The fourth is dated August 22, 1997 and is in the amount of $27,902.00. A year later, on August 14, 1998, the expenditure authorized in the standing order was $61,793.85. (Plaintiffs' exhibit 18).

can be granted." A Motion to dismiss under Rule 12(b)(6), tests only the formal sufficiency of the statements of the claims for relief. In ruling on a 12(b)(6) motion, the court must take all of the plaintiffs' allegations as true, view them in a light most favorable to them, and draw all inferences in their favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the plaintiff could prove no set of facts in support of her claim that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir.1994) (citations omitted); *see also Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982) (citing 5A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 at 598 (1969), for the proposition that "the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."), cert. denied, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983).

## B. Qualified Immunity

■ At this stage, the court must also consider the issue of qualified immunity since it is immunity from suit not just from liability. *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir.1994). The Fifth Circuit has recently discussed the requirements for assessing a qualified immunity claim. *See Brown v. Nationsbank Corp.*, 188 F.3d 579, 587 (5th Cir.1999). The district court must determine "whether (1) the plaintiffs have asserted a constitutional or statutory violation; (2) the law regarding the alleged violation was clearly established at the time of the operative events; and (3) the record shows that the violation occurred, or at least gives rise to a 'genuine issue of material fact as to whether the defendant actually engaged in the conduct that violated the clearly-established law.'" *Id.* citing *Kerr v. Lyford*, 171 F.3d 330, 338

(5th Cir.1999). If the official's conduct violated a clearly established law, the inquiry then becomes whether that conduct was reasonable. *Brown*, 188 F.3d at 579; *Wren v. Towe*, 130 F.3d 1154, 1159 (5th Cir.1997). Under *Wren*, the reasonableness inquiry turns on whether the official's actions "could reasonably have been thought consistent with the rights they are alleged to have violated." 130 F.3d at 1159; citing *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir.1990). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir.1994). Finally, abrogation of qualified immunity is the exception not the rule. *Foster*, 28 F.3d at 428 (citing *McGregor v. Louisiana State Univ. Bd. of Supervisors*, 3 F.3d 850, 862 (5th Cir.1993)). It is the plaintiffs' burden to negate the defense. *Foster*, 28 F.3d at 428; *Chrissy F. v. Mississippi Dep't. of Public Welfare*, 925 F.2d 844, 851 (5th Cir.1991).

## III. ANALYSIS OF CLAIMS

### A. Civil RICO

In the Second Amended Complaint, plaintiffs assert civil RICO claims against Patillo, Rader, Boubel, Pearce, Bailey, Jones, Winder, and Winder's Inc. The police officers: Lujan, Cooper, and Newell, are not sued under civil RICO.

Plaintiffs allege Patillo, Rader, and Boubel (along with Bailey and Jones who acted under their direction and control) committed the predicate acts of bribery in violation of section 36.02(a)(1) TEX. PEN. CODE (Vernon 1994) which is a second degree felony punishable by a term of imprisonment of not more than 20 but at least 2 years. § 12.33 TEX. PEN. CODE. Since they used SFASU as an "enterprise" this would violate 18 U.S.C.1962 sections (c) and (d). Winder is alleged to have accepted the

bribe through his company and filed a false accident report in violation of 1962(a), (b) and (d). Plaintiffs only civil RICO claim against Pearce seems to be that he filed suit against the estate of Brian La-Barbera as there is no allegation that he committed any predicate act.

In order to bring a civil RICO suit under 18 U.S.C. § 1964(c), a plaintiff must first show that he is a person who has been "injured in his business or property by reason of a violation of section 1962 of this chapter." An injury to a plaintiff's business or property is a prerequisite to bringing a suit under section 1964. *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606–07 (5th Cir.1998); *Zervas v. Faulkner*, 861 F.2d 823, 833 (5th Cir.1988) (holding a civil RICO plaintiff can only recover to the extent that he has been injured in his business or property); *see also Nodine v. Textron, Inc. et. al.*, 819 F.2d 347, 348–49 (1st Cir.1987) (holding that a plaintiff lacks standing if he is unable to show injury to business or property by the conduct constituting the RICO violation). The injury must be proximately caused by the conduct constituting the RICO violation. *See Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (establishing proximate cause as a requirement for civil RICO claims); *Pelletier v. Zweifel*, 921 F.2d 1465, 1499 (11th Cir.1991).

In their Second Amended Complaint, plaintiffs seek the following damages under section 1964:

(1) The RICO bribery conspiracy as set forward above was the legal cause and proximate cause of financial harms to the LaBarbera Plaintiffs. To obtain truthful information about the circumstances surrounding the death of their son, and to protect themselves in litigation filed against them by John Pearce and Jamie Pearce as representatives of the Estate of Brian LaBarbera,[3] they were obliged to expend money for the following:

(1a) To retain the services of investigators to ascertain the identity of witnesses to the accident and the facts surrounding the accident; and

(2a) To retain the services of legal counsel to represent their interests as representatives of the Estate in the litigation filed against them by Defendant Pearce in an effort to recover money from Plaintiffs in excess of the policy liability limits in Brian LaBarbera's insurance liability policy; and

(3a) To pay the costs of taking the depositions to defend against the litigation filed against them by Defendant Pearce in an effort to recover money from Plaintiffs in excess of the liability limits in Brian LaBarbera's insurance liability policy; and

(4a) To spend their own valuable time attempting to defend against the claims brought against them by Defendant Pearce; and

(2) Additionally, Plaintiffs were obliged to retain legal counsel to protect and vindicate their rights, for which they seek attorney's fees and costs, as is provided under 18 U.S.C. § 1964;

(3) Further, pursuant to the provisions of 18 U.S.C. § 1964, Plaintiffs seek treble their actual damages.

(Second Amended Complaint, p. 27).

A cause of action is a form of property. *See Malley–Duff & Assocs. Inc., v. Crown Life Ins. Co.*, 792 F.2d 341, 353–54 (3rd Cir.1986). To the extent that the plaintiffs incurred expenses as a result of defending Pearce's claim and asserting a counter-claim against him those expenses can be the subject of a civil RICO cause of action. *See Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1166–67 (2d Cir.1993); *see also Hertz Corp. v. Caulfield*, 796 F.Supp. 225 (E.D.La.1992). In

---

3. The exact status of the LaBarberas' standing is unclear as the plaintiffs state that no estate has ever been formally created. (Plaintiffs' Response to the University Defendants Motion to Dismiss and Motion for Leave to File Second Amended Complaint, p. 2).

*Stochastic,* plaintiff (a judgment creditor) brought suit for conspiracy to prevent it from satisfying outstanding judgments by means of fraudulent asset transfers. The court distinguished between the expenses incurred as a result of the defendant's alleged RICO violations and those which were caused by the defendant but did not result from acts alleged to violate RICO. The second circuit held that the attorneys fees incurred to *obtain* the underlying judgments were not RICO damages, but that attorney fees obtained to *collect* them were RICO damages. *Id.*

■ In the present case, plaintiffs allege the bribery scheme and conspiracy to cover-up evidence constitute the predicate RICO acts from which their injuries flow. However, a civil RICO cause of action does not accrue until the amount of damages becomes clear and definite. *See First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 768 (2d Cir.1994). The claim Pearce asserted has been settled, but the plaintiffs have asserted a counter-claim against Pearce which is still pending in state court. Until the state court litigation is over, the plaintiffs' damages are premature and speculative. If the case goes to trial in state court and the LaBarbara's lose, certain issues will be subject to collateral estoppel or res judicata which might preclude the civil RICO claim.[4] If they win, the LaBarberas would then be able to bring a civil RICO claim for attorney fees and litigation expenses incurred as a result of the conspiracy to cover up evidence.

■ Assuming the LaBarberas will have standing, they have properly alleged a civil RICO claim against Patillo, Boubel, Rader, Jones, Bailey and Winder. Patillo Boubel, Rader, Jones, Bailey and Winder are "persons" within the meaning of RICO. Plaintiffs however, have failed to state a civil RICO claim against Pearce as there is no allegation that he committed or conspired to commit any predicate act under section 1962, nor that he even attempted to conduct or participate in the affairs of SFASU via the bribery scheme.

■ Further, while Winder's Inc. is a RICO "enterprise" in which the proceeds of illegal activity have been received and invested, it is not a "person" and therefore cannot be sued under section 1962. A RICO defendant must be a separate and distinct entity from the enterprise. *See Ashe v. Corley,* 992 F.2d 540, 544 (5th Cir.1993); *In Re Burzynski,* 989 F.2d 733, 743 (5th Cir.1993). A defendant cannot associate with itself. Under RICO, the person is the wrongdoer while the enterprise is the passive instrumentality through which the person acts. *See Salvador v. Mazzocone,* 686 F.Supp. 528, 530 (E.D.Pa.1987) (noting that the prohibitions of § 1962(c) apply only to the person rather then the enterprise).

Plaintiffs have alleged predicate acts of bribery and falsification of evidence by which the plaintiffs may have suffered damages to their property. The plaintiffs injuries however, are speculative at this time, thus the civil RICO claim under section 1964(c) is premature and should be dismissed without prejudice as to defendants Patillo, Boubel, Rader, Jones, Bailey and Winder. The claim will not accrue until the conclusion of the state court litigation. The civil RICO claims against Pearce and Winder's Inc are dismissed with prejudice for failure to state a claim.

### B. Section 1983 and Conspiracy to violate civil rights

There are two elements of a § 1983 cause of action: (1) the conduct in question must be committed by a person acting under the color of state law; and (2) the conduct must deprive the plaintiff of a right secured by the Constitution or the laws of the United States. *See Hicks v. Bexar County, Texas,* 973 F.Supp. 653,

---

4. For example, should a fact finder find that Pearce was not negligent, or did not proximately cause the accident, the plaintiffs might be precluded from re-litigating an essential element of their RICO claim-that Pearce was really at fault.

666–67 (W.D.Tex.1997). In the present case, there is no question that the police defendants were acting under color of state law, the question is whether the plaintiffs can show that their rights under the federal constitution were violated.

Plaintiffs allege Winder, Newell, Cooper, Lujan, and Patillo covered up and fabricated evidence and prepared false accident reports for the purpose of assisting Pearce in litigation against the plaintiffs. Further, Patillo, Rader, Boubel, Jones, and Bailey allegedly bribed Winder by increasing the purchase order after the accident. This was done with the intent to assist Pearce in litigation. Pearce joined in and furthered the conspiracy by filing suit. Plaintiffs also base their claim on Patillo's, Rader's and Boubel's actions before the accident in which they "bribed" Winder in order to secure corrupt influence in the Police Department.

Plaintiffs assert two constitutional violations which are both connected with the LaBarberas' right of access to court. First, plaintiffs allege they were deprived of a constitutionally protected interest, namely money because they were forced to litigate Pearce's suit. Second, plaintiffs allege a substantive due process violation based on the right "not to be subjected to deliberate falsification of evidence in official investigations and governmental records, and to official investigations that are not tainted by bribery and public corruption..." (Second Amended Complaint, p. 28).

*1. Access to Court*

Plaintiffs contend the basis of their § 1983 claim is that the defendants' actions regarding the investigation of the accident prevented the plaintiffs effective and adequate access to court. (Plaintiffs' Response, p. 14). Plaintiffs state: "Defendants Winder, Newel, Cooper, Lujan, Pattillo, Pearce, Boubel, Rader, Bailey and LeBlanc Jones recklessly or intentionally agreed to act and did act in concert to secure fabricated and falsified evidence in

an official accident investigation and accident reports, for the purpose of assisting Defendant Pearce to collect money from Plaintiffs through litigation." (Second Amended Complaint, p. 32).

Plaintiffs are ostensibly claiming that the bribe and "rigged" investigation were wrongful interferences with the La-Barbera's access to the courts. Denying effective and meaningful access to court can be a valid theory of recovery. Most often the right is implicated by prisoners where the right of access is physically blocked either by lack of facilities (i.e., the lack of a law library) or by court order. However, some courts have found a constitutional violation where access was blocked by a cover-up or concealment of evidence. *See Ryland v. Shapiro,* 708 F.2d 967, 972–73 (5th Cir.1983) (holding that state prosecutors who engaged in a cover-up of a murder which one of them committed interfered with plaintiff's ability to file suit in Louisiana state court gave rise to a valid 1983 claim); *Chrissy F.,* 925 F.2d 844 (holding a minor successfully pled a claim where state and county welfare department employees failed to report or investigate allegations of abuse thus denying access to Mississippi Youth Court). This right is based on the first amendment right to petition, and the Fifth and Fourteenth Amendment due process clauses. *Ryland,* 708 F.2d at 972–72 (citing *Chambers v. Baltimore & Ohio R.R.,* 207 U.S. 142, 148, 28 S.Ct. 34, 52 L.Ed. 143 (1907) and *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)); *Chrissy F.,* 925 F.2d at 851. "The right of access to the courts is what may be described as a facilitative right: It is designed to ensure that a citizen has the opportunity to exercise his or her legal rights to present a cognizable claim to the appropriate court and, if that claim is meritorious, to have the court make a determination to that effect and order the appropriate relief." *Crowder v. Sinyard,* 884 F.2d 804, 814 (5th Cir.1989); *Venable v.*

*Keever,* 61 F.Supp.2d 552 (N.D.Tex.1999) (citing *Foster,* 28 F.3d at 430).

The Fifth Circuit modified the right in *Foster v. City of Lake Jackson,* characterizing "the right of access (even 'adequate, effective, and meaningful access' as contemplated by *Crowder,* rather than only a physical right of access) to be implicated where the ability to file suit was delayed, or blocked altogether." 28 F.3d 425, 430 (5th Cir.1994) (citing *Crowder,* 884 F.2d at 811). In *Foster,* the parents of an accident victim sued the city for concealing and suppressing evidence during discovery which caused the parents to settle for less than they might have had they obtained the evidence at issue. 28 F.3d at 427. Unlike other circuits which construe a broader definition to "meaningful and effective" access, the *Foster* court held the right included the right to institute suit only. 28 F.3d at 430. In footnote seven the Fifth Circuit explicitly refused to extend the contours of the right of access beyond successfully instituting suit. Referring to the Seventh Circuit's decision in *Bell v. City of Milwaukee,* 746 F.2d 1205 (1984) (permitting a right of access claim even though state suit had been successfully filed), the Fifth Circuit wrote: "We question *Bell*'s reliance on *Ryland* for any broader definition of right of access than one encompassing the right to institute suit." 28 F.3d at 430, n. 7. While *Foster* concerned qualified immunity, the court noted that it continued to characterize the right of access in terms of the right to institute suit. *Id.* at n. 8; *see e.g., Chrissy F.,* 925 F.2d at 851. This seems to foreclose the possibility that the right of access can be violated once a suit is filed—even if the suit is hindered by a cover up or tampering of evidence. *But see Swekel v. City of River Rouge,* 119 F.3d 1259, 1264 (6th Cir.1997); *Delew v. Wagner,* 143 F.3d 1219, 1222–23 (9th Cir.1998) (both acknowledging that the right of access to

court may still be violated even though a suit was instituted because that access was not meaningful and effective). That is not to say such conduct is without punishment but simply that it does not rise to the level of a constitutional violation.

██  In the present case, plaintiffs are presently involved in litigation in state court where they have asserted a counterclaim against John Pearce alleging his negligence caused the accident. Plaintiffs' attorney informed the court that the state court suit is scheduled for trial in March of 2000. (Plaintiffs' Qualified Immunity Response, p. 2). In light of *Foster,* plaintiffs cannot state a claim based on the denial of access to court when there is a claim pending in state court. In order to establish damages on a denial of access claim, the cover-up must to some extent be successful in preventing the plaintiffs from instituting a suit—something this alleged cover-up failed to do.

The right of access, as defined in *Foster,* is not the right to win nor proceed without discovery abuses. 28 F.3d at 430. Plaintiffs have remedies for evidence abuses. While Texas does not recognize a separate cause of action for spoilation of evidence, it does vest the trial court with broad discretion, ranging from presumptions to "death penalty" sanctions, (striking of pleadings) in order to remedy improper conduct which destroys evidence. *See Trevino v. Ortega,* 969 S.W.2d 950, 953 (Tex.1998); *see also Aguirre v. South Texas Blood & Tissue Center,* 2 S.W.3d 454 (Tex.App.— San Antonio 1999, pet. denied) (noting that the intentional destruction or spoilation of relevant evidence may give rise to a presumption that the destroyed evidence would not have been favorable to its destroyer, but that the presumption may be rebutted by a showing that the evidence was not destroyed with fraudulent intent or purpose).[5] Moreover, it appears plaintiffs have in their possession, some of the

---

**5.** Nothing in this opinion should be read to limit or preclude the plaintiffs from asserting

a civil conspiracy claim in state court.

evidence which they claim was excluded from the police investigation. They have the traffic light sequencing information. (Plaintiffs' Qualified Immunity Response, p. 3). They have Pearce's deposition in which he states he did not take evasive action. *Id.* They have Brian LaBarbera's boots and helmet. The only evidence which they claim they do not have because of the defendants' actions is Pearce's blood-alcohol test and a record of the skid marks.

### 2. Substantive Due Process.

Plaintiffs claim that the defendants' acts violated their rights under the substantive due process clause of the Fourteenth Amendment. Since all the events which give rise to this lawsuit occurred after the death of Brian LaBarbera, the parents only have standing to assert claims for violation of their substantive due process rights. They do not attempt to assert a claim for any violation of Brian LaBarbera's constitutional rights.

The substantive due process clause of the Fourteenth Amendment guarantees more than fair process, extending to a substantive sphere which bars " 'certain governmental actions regardless of the fairness of the procedures used to implement them.' " *County of Sacramento v. Lewis,* 523 U.S. 833, 840, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (citing *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). The doctrine of judicial restraint requires that the utmost care be used in determining substantive due process claims as the guideposts for decision making are scarce and open-ended. *Collins v. City of Harker Heights,* 503 U.S. 115, 125, 126–27, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)(rejecting a claim that negligent conduct by a state official consti-

tuted a violation of the substantive due process clause).

■ In defining the contours of the substantive due process claim in *Lewis,* the Court noted that such claims are inappropriate if covered by a more definite provision of the constitution. 523 U.S. at 843, 118 S.Ct. 1708. The plaintiffs seek to recover the increased litigation costs incurred as a result of the bribery scheme involving falsification of evidence as well as damages for emotional distress.[6] This is the same claim which the *Foster* court considered. All of the plaintiffs' injuries occurred as a result of the defendants' acts which prevented or hindered plaintiffs in state court litigation. In their motion for reconsideration, plaintiffs argue that they should be able to assert a substantive due process claim because their the right of access was foreclosed by the *Foster* decision. This is incorrect. The *Foster* court held that the right of access was defined by the First Amendment and due process clauses of the Fifth and Fourteenth Amendments but that right was only violated where the ability to file suit was delayed or blocked altogether. Plaintiffs cannot assert a substantive due process claim under the auspices that the right which forms the basis of their claim is not governed by a more particular provision of the constitution when the Fifth Circuit has already defined the contours of that right. Since this is more accurately characterized as an access to courts claim, this court will not permit the plaintiffs to assert a substantive due process claim.

■ Moreover, there is the qualified immunity issue. In light of *Foster,* the right of access does not appear to be

---

**6.** Plaintiffs rely on *Turner v. Upton County,* 915 F.2d 133 (5th Cir.1990), to argue that corrupt law enforcement based on bribes violates the equal protection and substantive due process provisions of the Constitution. In *Turner,* a woman sued the sheriff, district attorney, and county alleging that sheriff and district attorney subjected her to a "sham trial." The only issue on appeal in the case

was the county's liability. The Fifth Circuit held that the county could be liable for the acts of the sheriff and district attorney because they were policy-makers who chose objectives and the means of achieving them. *Id.* at 136. The case is inapplicable to the present case because the LaBarberas are suing the defendants in their individual capacities only and not SFASU or the city of Nacogdoches.

clearly established as the court noted that acts which hinder or conceal evidence while improper, do not amount to constitutional violations. 28 F.3d at 430–31. Assuming however, that a clearly established right was violated, the defendants would not be entitled to qualified immunity as the plaintiffs have plead violations of specific statutory provisions for Winder, Cooper and Newell. Lujan is alleged to have done nothing more than refusing (negligently or recklessly) to accept potentially exculpatory evidence from the plaintiffs. There is no allegation that he violated any law, was part of the conspiracy, knew about the alleged bribery scheme, nor that he otherwise participated in the cover-up. A police investigator must have discretion to conduct an investigation. The policy behind qualified immunity protects the police officers in these situations. Thus, even assuming Lujan's actions constituted a violation of a clearly established right, his actions were objectively reasonable and Lujan would be entitled to qualified immunity on the claims against him.

The plaintiffs have instituted a suit which is currently pending in state court and therefore have failed to state a section 1983 claim for a violation of their constitutional rights or for a conspiracy to do so. Thus, the section 1983 claim should be dismissed.

## C. Intentional Infliction of Emotional Distress

■ Plaintiffs assert this claim generally against all defendants based on the bribery and falsification of government records. To recover for the tort of intentional infliction of emotional distress, a plaintiff must plead that: (1) the defendant acted intentionally or recklessly; (2) the conduct was "extreme and outrageous;" (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993).

■ The Texas Supreme Court has recently held that the tort of intentional infliction of emotional distress is "available only in those situations in which severe emotional distress is the *intended consequence* or *primary risk of the actor's conduct.*" *Standard Fruit & Veg. Co. v. Johnson*, 985 S.W.2d 62, 67 (Tex.1998). In *Johnson*, a driver who drove his truck into a parade was held not liable for his recklessly causing emotional distress because emotional distress was not the intended consequence or primary risk of the driver's conduct. *Id.* at 67. Citing the Restatement section 46, the court noted that redress is only meant to be available when the tortfeasor desired or anticipated that the plaintiff would suffer severe emotional distress. *See* RESTATEMENT (SECOND) OF TORTS § 46 (1965). The Texas Supreme Court made clear that the tortfeasor must have intended, as his main act, to invade the plaintiff's protected interest in freedom from emotional distress. The claim "cannot be maintained when the risk that emotional distress will result is merely incidental to the commission of some other tort." *Id.* at 68. "In short, intentional infliction of emotional distress is a 'gap-filler' tort that should not be extended to circumvent the limitations placed on the recovery of mental anguish damages under more established tort doctrines." *Id.* The focus of these distinctions is not merely the availability of another cause of action, it is the tortfeasor's intent.

■ Plaintiffs do not dispute the holding of *Johnson*. They claim however that it does not apply to the police defendants. Plaintiffs allege the defendants acted with the intent to cause emotional distress. However, a fair reading of the complaint, construing the facts in the plaintiffs' favor reveals that the intended and foreseeable consequence of the cover-up was not to inflict emotional distress upon the plaintiffs but to protect Pearce, the head football coach. Plaintiffs cannot meet this requirement by merely pleading that the defendants acted with the requisite intent.

The plaintiffs' claim for intentional infliction of emotional distress should be dismissed.

## IV. INJUNCTIVE RELIEF

In the Second Amended Complaint, plaintiffs seek injunctive relief against Robert Smith in his official capacity as SFASU president. Plaintiffs seek to enjoin the practices of bid-rigging and bid-carving on the equitable ground that payments under a "scheme involving bribery are repugnant, and the source of continuing injury to the plaintiffs". (p. 34). The court finds that the plaintiffs have not shown that they are likely to prevail on the merits nor that they are likely to suffer future or continuing harm as a result of continued payments. The court hereby denies any injunctive relief sought.

## V. CONCLUSION

The facts alleged by the plaintiffs in this case, if true, merit investigation and prosecution by the relevant authorities. While plaintiffs are understandably upset by the circumstances surrounding their son's death, that alone does not give them standing to pursue claims for section 1983 or for the intentional infliction of emotional distress even though some of the defendants may have committed criminal acts. As damages under civil RICO are speculative at this time, Plaintiffs will have an opportunity to bring their RICO claim at the conclusion of the litigation in state court.

The defendants' motions are GRANTED and the plaintiffs' claims for intentional infliction of emotional distress and violation of section 1983 are hereby DISMISSED with prejudice. The plaintiffs' civil RICO claim against Patillo, Rader, Boubel, Jones, Bailey and Winder is dismissed without prejudice with leave to refile after the cause of action has accrued. The civil RICO claims against Pearce and Winder's Inc. are dismissed with prejudice.