Douglas C. WALTER, et al., Plaintiffs,

v.

**PALISADES COLLECTION, LLC, et al., Defendants.**

Civil Action No. 06–378.

United States District Court, E.D. Pennsylvania.

March 28, 2007.

Stuart A. Eisenberg, McCullough & Eisenberg PC, Warminster, PA, for Plaintiffs.

Jonathan J. Greystone, Spector Gadon & Rosen, PC, Philadelphia, PA, for Defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Before the Court is the often rehearsed yet unsettled question of whether reliance upon a misrepresentation is required in order to maintain a civil RICO action predicated on mail or wire fraud.

It all started so simply. A debt collector told an individual that she owed a debt; the individual disagreed; the debt collector sued; the individual contested the suit; and the debt collector withdrew the suit. The case is resolved and the individual is vindicated.

Instead, the individual who was sued now seeks to transform this routine back-and-forth into a civil RICO action. She alleges that the debt collector knew she wasn't liable on the debt; that it was the debt collector's and its attorney's practice to pursue and sue people for debts they didn't owe; that Defendants' violated the mail and wire fraud statutes by commencing the suits and conducting other litigation-related activities; and that she was injured by Defendants' actions because she was forced to hire an attorney to defend the suit.

Before the Court proceeds down this path, the individual who was sued in state court must show that she has standing to bring this federal civil RICO action. The specific question before the Court is whether the payment of attorneys' fees to one's own lawyer to contest a "fraudulently" filed lawsuit is in reliance on a misrepresentation and thus satisfies the proximate causation requirement for a fraud predicate for a civil RICO claim. The Court holds that it is not.

Plaintiffs' RICO claim therefore cannot stand, and Defendants' motion to dismiss the claim will be granted.

## I. BACKGROUND

Plaintiffs bring this putative class action RICO suit against two collection agencies and the agencies' attorneys, alleging that Defendants violated the mail and wire fraud statutes (and thus performed predicate acts to establish liability under RICO) by filing lawsuits against married couples to collect unpaid debts for which only one of the spouses is liable.

Plaintiffs are two individuals (Douglas Walter and Kathleen Paone) whose respective spouses incurred a credit card debt and who were subsequently sued, along with their spouses, to recover on that debt. Defendants are two collection agencies (Palisades Collection, LLC, and Great Seneca Financial Corp.), the agencies' law firm (Wolpoff & Abramson, LLP ("W & A")), and several individual attorneys employed by W & A.[1]

Plaintiffs bring claims under the Fair Debt Collection Practices Act ("FDCPA") (Count I), the Racketeer Influenced and Corrupt Organizations ("RICO") Act (Count II), and the Pennsylvania state law Unfair and Deceptive Trade Practices Act ("UDTPA") (Count IV). (Count III was against a defendant, Washington Mutual, that is no longer in the case.) The Court has already denied Defendants' motion to

---

1. Plaintiffs also brought suit against Household Bank HSBC Bank and Washington Mutual Credit Card Services, but these defendants have since been voluntarily dismissed.

dismiss Counts I (FDCPA) and IV (UDT-PA) (doc. no. 44).

The only issue before the Court is whether Plaintiffs' RICO claim should be dismissed.[2]

## A. The Alleged Scheme

The credit card issuer (HBSC and Washington Mutual, both of which have been dismissed from the case) issued a credit card to the signatory of the credit card contract. The signatories relevant here are Jill Walter, the wife of plaintiff Douglas Walter, and Joseph Paone, the husband of plaintiff Kathleen Paone.

When the signatories did not pay the amounts due on the credit card, the credit card issuer sold or assigned the credit card debt to collection agencies (Great Seneca and Palisades). The collection agencies, through their law firm (W & A), sought collection from and ultimately sued both the signatory and the signatory's spouse.[3] The signatory's spouse retained (and paid) an attorney to challenge the suits,[4] and W & A withdrew both suits.

So, the gravamen of the RICO action is that Defendants fraudulently named non-liable spouses in lawsuits filed in an attempt to collect a debt.

## B. Specific Factual Allegations [5]

On December 27, 2005, W & A, on behalf of its client Palisades Collection, filed

2. The Court ordered Plaintiffs to file a RICO case statement (doc. nos. 44, 45), which they did (doc. no. 46). Then, Defendants moved to dismiss the RICO claim (doc. no. 48), and Plaintiffs responded (doc. nos. 49, 51). Plaintiffs also submitted an "addendum" to their RICO case statement (doc. no. 50). Once all the pleadings were filed, the Court held oral argument to focus on the issues of proximate causation and reliance (doc. no. 53).

3. Plaintiffs' contention is that only the signatory spouse is liable for the debt on the credit card; the non-signatory spouse is not liable. Defendants dispute this contention, pointing to the doctrine of necessaries. See 23 Pa. Cons.Stat. § 4102. Given the disposition of the action, the Court need not decide whether Defendants' activities are covered under the doctrine.

4. It is unclear if the signatory retained the same lawyer as his or her spouse, a different lawyer, or no lawyer at all.

5. The facts presented here are drawn from Plaintiffs' complaint and RICO Case Statement ("RCS") and when disputed are viewed in the light most favorable to Plaintiffs.

Plaintiffs filed their RCS on August 2, 2006. The RCS incorporates portions of the amended complaint (doc. no. 33) and exhibits attached thereto. The RCS fails to comply with Federal Rule of Civil Procedure 10(b) because it does not contain separately numbered paragraphs; because of this deficiency, the Court is forced to refer to specific portions of the RCS solely by page number.

On August 25, 2006, three weeks after Plaintiffs filed the RCS and one week after Defendants renewed their motion to dismiss the RICO claim, Plaintiffs filed an "addendum" to the RCS. The Court had instructed Plaintiffs to file a RCS by August 2, 2005. (See Doc. Nos. 44, 45.) The Court's Orders were silent on whether an addendum could be filed.

The RCS is a pleading, and as such it is governed by Federal Rule of Civil Procedure 7. Once Defendants responded to the RCS, Plaintiffs could amend the RCS only by leave of Court or written consent of Defendants. Fed.R.Civ.P. 15(a). Here, the Court did not give leave to file an addendum, and Defendants did not supply their written consent.

Therefore, the "addendum" is improper and its contents will be disregarded.

Nevertheless, the contents of the "addendum" do not help Plaintiffs' case. The "addendum" attempted to include new damages suffered by Mr. Walter. It alleged that, eight months after W & A filed the suit against him and his wife, Mr. Walter paid the $6,467 debt—the debt that he didn't owe—to Palisades. Addendum at 1. The implication is that Mr. Walter paid the debt to clear his credit to help him obtain a mortgage.

As is explained below, Defendants' allegedly fraudulent actions are not the proximate

a lawsuit against Jill Walter and Douglas Walter in the Bucks County, Pennsylvania, Court of Common Pleas. RCS at 2; Compl. ex. 3 (the "Walter complaint"). On August 5, 2005, W & A, on behalf of its client Great Seneca, filed a lawsuit against Joseph Paone and Kathleen Paone with a Magisterial District Judge in Montgomery [6] County, Pennsylvania. RCS at 4; Compl. ex. 4 (the "Paone complaint"). The complaints list W & A's location as Pennsylvania, Palisades's location as New Jersey, and Great Seneca's location as Maryland. Compl. exs. 3, 4. The Walter complaint included the names of nine W & A attorneys; the Paone complaint eight. Compl. exs. 3, 4. Each of these ten attorneys (seven were listed on both complaints, two were listed only on the Douglas complaint, and one was listed only on the Paone complaint) has been named as a defendant in the current action.

Plaintiffs allege that, in connection with both the Walter complaint and the Paone complaint, Palisades, Great Seneca, and W & A caused the interstate mails and wires to be used.[7] In addition, Plaintiffs allege that Defendants caused the mails to be used because Mr. Walter's counsel filed the matter sub judice by mail and "served Palisades by mail to [W & A]." RCS at 21.

Plaintiffs allege that Mr. Walter and Ms. Paone suffered damages of $750 and $250, respectively, because they paid these amounts as retainers to their counsel to defend the actions. RCS at 3, 5. Also, both Plaintiffs will have to pay "additional attorneys fees and costs" in the future. RCS at 16. Finally, Plaintiffs allege that

the Walters might suffer damages by having trouble securing a mortgage, because the filing or pendency of the civil suit "is of record with the respective credit reporting agencies." RCS at 16.

Plaintiffs also allege damages suffered by the putative class:

(1) They paid counsel fees and costs for defense of such an action; (2) They paid all or part of the debt for which they were/are not liable; (3) Judgements have been filed against them which are of record and adversely impact their credit-worthiness, and the like; (4) Credit reporting agencies list the alleged indebtedness which adversely impacts their credit-worthiness[; and] (5) Other damages not set forth above.

RCS 16–17. However, damages suffered by a potential class member are not relevant at this stage; only damages suffered by Plaintiffs themselves are relevant. According to the complaint, the only damages even plausibly suffered by Plaintiffs themselves are that they paid counsel fees and costs to defend the actions and that their credit-worthiness has been adversely impacted. They did not pay the debt (they contested it), and judgments have not been filed against them (the suits have been withdrawn). The Court will disregard their contention that they have suffered "other damages," because RICO liability cannot attach for unspecified damages.

## II. DISCUSSION

### A. *Motion to Dismiss Standard*

A motion to dismiss for failure to state a claim brought pursuant to Federal Rule of

---

cause of Mr. Walter's paying the debt. Indeed, Mr. Walter paid the debt even though he specifically knew he didn't owe it.

**6.** While the RCS lists the county as Bucks County, the civil complaint itself correctly identifies the county as Montgomery County.

**7.** Plaintiffs provide a litany of Defendants' alleged uses of the interstate mails, interstate

wires, e-mail, and/or interstate carriers, see RCS at 2–5, 20–21, but fail to inject any specificity into their allegations. Regardless, Plaintiffs' failure to plead their fraud allegations with particularity, as required by Federal Rule of Civil Procedure 9(b), is not what is fatal to their RICO claim.

Civil Procedure 12(b)(6) serves to test the sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). Therefore, the court must accept as true all factual allegations made in the complaint and all reasonable inferences that can be drawn therefrom. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988). The motion should be granted only if "no relief could be granted under any set of facts which could be proved." *Id.*[8]

■ Although RICO claims are generally subject to the notice pleading requirements of Rule 8(a), *Rose v. Bartle,* 871 F.2d 331, 356 (3d Cir.1989), RICO allegations sounding in fraud are subject to the heightened pleading standards of Rule 9(b), *Lum v. Bank of America,* 361 F.3d 217, 223–24 (3d Cir.2004). Under Rule 9(b), "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir. 1984).

### B. *The Law of RICO*

The RICO statute provides:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorneys' fee.

18 U.S.C. § 1964(c). Plaintiffs have brought this RICO action pursuant to 18 U.S.C. § 1962(c), which prohibits racketeering and unlawful debt collection, and 18 U.S.C. § 1962(d), which prohibits conspiring to violate one of the other RICO sections.

Section 1962(c) provides:

It shall be unlawful for any person employed by or associated with the any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

28 U.S.C. § 1962(c). In somewhat of a semantic riddle, Plaintiffs are proceeding under the "pattern of racketeering activity" prong, not the "collection of unlawful debt" prong (even though the gist of the complaint is that Defendants attempted to collect a debt to which they were not lawfully entitled). (See Doc. No. 42, at 17.)

Thus, in order to plead a violation of § 1962(c), plaintiffs must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lum v. Bank of America,* 361 F.3d 217, 223 (3d Cir.2004) (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3292, 87 L.Ed.2d 346 (1985)).

"Racketeering activity" is defined in a list of various state and federal offenses, 18 U.S.C. § 1961(1), two of which are the mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343. A "pattern of racketeering activity" is established with proof of the commission of at least two acts of racketeering activity (known as

---

**8.** The Court has not converted this motion to dismiss into a motion for summary judgment, nor has not considered any documents outside of the pleadings. Indeed, the only documents considered by the Court were those attached to Plaintiffs' complaint.

predicate acts) within a ten-year period. 18 U.S.C. § 1961(5). Here, Plaintiffs allege that the predicate acts are Defendants' violation of the mail and wire fraud statutes by filing the state court lawsuits and conducting other litigation-related activities.

■ The elements of the predicate acts of mail and wire fraud are: "(1) the existence of a scheme to defraud; (2) the participation by the defendant in the particular scheme with the specific intent to defraud; and (3) the use of the United States mail or of wire communications in furtherance of the fraudulent scheme." *United States v. Syme,* 276 F.3d 131, 142 n. 3 (3d Cir.2002). The defendant must have the specific intent to defraud, which "may be found from a material misstatement of fact made with reckless disregard for the truth." *United States v. Coyle,* 63 F.3d 1239, 1243 (3d Cir.1995) (quoting *United States v. Hannigan,* 27 F.3d 890, 892 n. 1 (3d Cir.1994)). The scheme to defraud "need not be fraudulent on its face but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *United States v. Pearlstein,* 576 F.2d 531, 535 (3d Cir.1978).

The Eleventh Circuit has helpfully aggregated the requirements for a civil RICO claim predicated upon mail or wire fraud:

(1) that the defendant intentionally participated, (2) in a scheme to defraud, (3) the plaintiff of money or property, (4) by means of material misrepresentations, (5) using the mails or wires, (6) and that the plaintiff relied on a misrepresentation made in furtherance of the fraudulent scheme, (7) that such misrepresentation would have been relied upon by a reasonable person, (8) that the plaintiff suffered injury as a result of such reliance, and (9) that the plaintiff incurred a specifiable amount of damages.

*Sikes v. Teleline, Inc.,* 281 F.3d 1350, 1360–61 (11th Cir.2002) (footnotes omitted).

Although Defendants have asserted several grounds for dismissing the RICO claim,[9] only one (the issue of RICO standing) needs to be discussed. Plaintiffs lack standing to bring this RICO action.

### C. Application: RICO Standing

To have standing[10] under RICO, (1) a plaintiff's "business or property" must have been "injured" (2) "by reason of" the defendant's RICO violation. 18 U.S.C. § 1964(c); *Holmes v. Sec. Investor Prot.*

---

**9.** Specifically, Defendants argue ten grounds for dismissing the § 1962(c) claim. They are: (1) that Plaintiffs lack standing under RICO; (2) that the fraud allegations are not pled with particularity; (3) that the claims against the individual attorneys are insufficient; that the complaint fails on the grounds that it does not contain sufficient allegations of (4) Defendants' willfulness or actual knowledge, (5) the threat of continuity of the alleged scheme, (6) interstate commerce, or (7) an enterprise; that Defendants are not liable because of (8) the doctrine of necessaries and (9) the operation and management test; and (10) that W & A and its attorneys are immune from liability for statements made in a litigation.

Defendants also argue that the conspiracy claim, § 1962(d), should be dismissed because the § 1961(c) claim fails.

**10.** A motion to dismiss under Rule 12(b)(6) for lack of RICO standing is distinct from a motion to dismiss under Rule 12(b)(1) for lack of constitutional standing. *Maio,* 221 F.3d at 481 n. 7; *see also Magnum v. Archdiocese of Phila.,* 2006 WL 3359642, at *3 (E.D.Pa. Nov.17, 2006) (Davis, J.) ("[T]hese civil RICO 'standing' requirements are viewed as questions regarding the adequacy of the pleadings, rather than as questions of subject matter jurisdiction.") (citing *Anderson v. Ayling,* 396 F.3d 265, 269 (3d Cir.2005)).

*Corp.,* 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992).

### 1. *Injury to business or property*

■ To meet the injury requirement, a plaintiff must allege "a concrete financial loss and not mere injury to a valuable intangible property interest." *Maio v. Aetna, Inc.,* 221 F.3d 472, 483 (3d Cir. 2000). This requirement can be satisfied by "allegations and proof of actual monetary loss, i.e., an out-of-pocket loss." *Id.*

Here, Plaintiffs have alleged four possible injuries, only one of which is sufficient to confer standing.

■ First, Plaintiffs allege that they were forced to expend money on attorneys' fees in order to contest the state court lawsuits. RCS at 3, 5. Specifically, Mr. Walter paid his attorney a retainer of $750 and Ms. Paone paid her attorney a retainer of $250 to defend the collection actions in state court. Legal fees are an actual out-of-pocket monetary loss. While there is some debate about whether legal fees can ever suffice as "injuries" under RICO,[11] the Third Circuit's focus on out-of-pocket expenses, *see Maio,* 221 F.3d at 483, leads to the conclusion that the payment of legal fees can be actionable injuries under RICO.

■ Second, Plaintiffs allege that they will be forced to expend money on attorneys' fees in the future to defend the state court lawsuits. RCS at 16. These prospective damages are not actionable. RICO liability cannot attach to future contingent damages. *See FL Receivables Trust 2002–A v. Bagga,* 2005 WL 563535, at *4 (E.D.Pa. Mar. 8, 2005) (Kauffman, J.)

---

**11.** *Compare Handeen v. Lemaire,* 112 F.3d 1339, 1354 (8th Cir.1997) (holding that the plaintiff's expenditure of attorneys' fees in objecting to the defendant's allegedly fraudulent claims in another litigation sufficient as an injury within the meaning of RICO), *and Stochastic Decisions, Inc. v. DiDomenico,* 995 F.2d 1158, 1167 (2d Cir.1993) (allowing legal fees to be recoverable under RICO), *and Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1105 (2d Cir.1988) (holding that the plaintiff could recover under RICO for past legal fees and expenses incurred "in fighting defendants' frivolous lawsuits in New York state court"), *and Geraci v. Women's Alliance, Inc.,* 436 F.Supp.2d 1022, 1039 (D.N.D.2006) (holding that the plaintiff had standing because he incurred out-of-pocket expenses that included attorneys' fees), *and Burger v. Kuimelis,* 325 F.Supp.2d 1026, 1035 (N.D.Cal. 2004) (holding that legal expenses incurred in other proceedings as a result of a RICO defendant's wrongful conduct can be recovered; "[l]egal expenses are concrete financial losses"), *and LaBarbera v. Angel,* 95 F.Supp.2d 656, 662 (E.D.Tex.2000) ("To the extent that the plaintiffs incurred expenses as a result of defending [the defendant's] claim and asserting a counter-claim against him those expenses can be the subject of a civil RICO cause of action."), *and Lemelson v. Wang Labs., Inc.,* 874 F.Supp. 430, 433 (D.Mass. 1994) ("Where legal fees are expended as an intended consequence of a defendant's racketeering activities, those fees may constitute RICO damages."), *with Deck v. Engineered Laminates,* 2001 WL 487940, at *4 (D.Kan. Apr. 10, 2001) (holding that attorneys fees and costs "are not the proprietary type of injury to which RICO is addressed"), *and Kashelkar v. Rubin & Rothman,* 97 F.Supp.2d 383, 391 (S.D.N.Y.2000) (grating the defendants' motion to dismiss the RICO count because the plaintiff's allegations that he was forced to spend time and money to defend himself in the state lawsuits was insufficient to establish injury for a RICO claim), *and Capasso v. CIGNA Ins. Co.,* 765 F.Supp. 839, 840–42 (S.D.N.Y.1991) (holding that the plaintiff's expenditure of attorney's fees in her divorce action—as well as attorney's fees for separate indemnification and guaranty actions—could not satisfy RICO's damage requirement for her RICO action against her ex-husband his affiliates), *and Local 355, Hotel, Motel, Restaurant & Hi–Rise Employees & Bartenders v. Pier 66 Co.,* 599 F.Supp. 761, 765 (S.D.Fla.1984) ("[Attorneys fees] are incidental damages and do not rise to the type of proprietary damage for which RICO provides compensation. Thus, the Union fails to state a cause of action under federal RICO law.").

(dismissing the plaintiff's RICO claim for lack of standing because the plaintiff's alleged injury—that it had lost money due to the defendant-borrowers' failure to honor a loan agreement—were contingent on the outcome of the plaintiff's still-pending collection action against the borrowers); *see also Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1106 (2d Cir.1988) (holding that the plaintiff could not recover future legal fees, because those injuries had not yet accrued); *LaBarbara v. Angel*, 95 F.Supp.2d 656, 663 (E.D.Tex.2000) (holding that the plaintiffs lacked standing because the other litigation was still ongoing, and "a civil RICO cause of action does not accrue until the amount of damages becomes clear and definite").

■ Third, Plaintiffs allege that they were forced to expend money on attorneys' fees to file the case sub judice. Clearly, any actions taken by Mr. Walter or his counsel to initiate or litigate the case sub judice cannot form the basis for RICO liability. It would be illogical to allow a plaintiff to have RICO standing based on damages incurred by the plaintiff in paying his attorney to file the RICO action. RICO's injury requirement would be a nullity if paying an attorney to initiate the RICO action itself sufficed as a damage. *Cf. McDonald v. Schencker*, 18 F.3d 491, 498 (7th Cir.1994) ("[The plaintiff] alleges that, as a proximate consequence of [the defendant's] bad acts, [the defendant] set in motion a series of routine and foreseeable uses of the U.S. mails, including ... the filing of the present RICO action, all of which extend indefinitely into the future. This is absurd.").

■ Fourth, Plaintiffs allege that their credit-worthiness scores have been adversely impacted. Here, they have not suffered any out-of-pocket damages. Indeed, they cannot point to any concrete financial losses stemming from the alleged lowering of their credit score, which itself allegedly stemmed from the state court lawsuits. Injury to one's credit score is analogous to injury to one's reputation, and is not actionable. *See Maio*, 221 F.3d at 483 (holding that injury to a valuable intangible property interest is not actionable); *see also Hamm v. Rhone–Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 954 (8th Cir.1999) ("Damage to reputation is generally considered personal injury and thus is not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c)."); *Kashelkar v. Rubin & Rothman*, 97 F.Supp.2d 383, 391 (S.D.N.Y.2000) (holding that the plaintiff's allegation that, due to the defendants' actions, "he experienced difficulty with his personal insurance coverage," was insufficient to establish injury for a RICO claim).

Therefore, Plaintiffs have standing under the first RICO prong because their past payments to their attorneys to defend them in the state court actions against Defendants' collection actions are "injuries" within the meaning of RICO.

### 2. *"By Reason Of"*

■ The Supreme Court has interpreted RICO's "by reason of" requirement to mean that the defendant's RICO violation must be the *proximate cause* of the plaintiff's injury. *Anza v. Ideal Steel Supply Corp.*, —— U.S. ——, ——, 126 S.Ct. 1991, 1996, 164 L.Ed.2d 720 (2006); *Holmes*, 503 U.S. at 268, 112 S.Ct. 1311. To meet this proximate cause requirement, the plaintiff must allege "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268, 112 S.Ct. 1311. A showing only that the RICO violation was a "but for" cause of the injury will not suffice for RICO standing. *Id.*

The issue becomes whether, in a RICO action predicated on a mail or wire fraud

violation, a defendant's alleged RICO violation and the plaintiff's injuries can be directly related if the plaintiff did not rely to his detriment on the violation. In other words, one of the components of proximate cause is reliance; if a plaintiff did not rely on the defendant's misrepresentation, then the misrepresentation cannot be the proximate cause of the plaintiff's injuries.

Here, Plaintiffs have not pled reliance in their complaint or RICO Case Statement, and for good reason: their factual allegations (and indeed counsel's admission at oral argument, *see* 3/22/07 Trans. at 12) conclusively demonstrate that they did not rely on Defendants' misrepresentations. Plaintiffs' allegation is that Defendants misrepresented to the non-signatory spouses that they were liable on the debt. If Plaintiffs paid the debt after falsely being told by Defendants that they were liable on it, Plaintiffs would be able to demonstrate reliance. Plaintiffs' course of action, though, is the opposite of reliance; it's defiance. After being (falsely) told they were liable on the debt, they hired lawyers and fought (and won) the lawsuits.

Whether reliance is necessary to establish proximate cause continues to be unsettled law. Although the majority of circuit courts and district courts within this circuit to address the issue have held that it is, the Third Circuit has not yet weighed in. *See Baker v. Family Credit Counseling Corp.,* 440 F.Supp.2d 392, 410 (E.D.Pa. 2006) (DuBois, J.) ("[T]here is no definitive Third Circuit case on the subject."). And the Supreme Court has twice in recent years failed to clarify the issue. *See Anza,* 126 S.Ct. at 1998 ("[W]e have no occasion to address the substantial question whether a showing of reliance is required."); *Bank of China v. NBM L.L.C.,* —— U.S. ——, 126 S.Ct. 675, 163 L.Ed.2d 545 (2005) (mem.) (dismissing certiorari for a previously granted petition that would have considered whether "civil RICO plaintiffs alleging mail and wire fraud as predicate acts must establish 'reasonable reliance' under 18 U.S.C. § 1964(c)").

The majority view stems from the Supreme Court's decision in *Holmes* that a RICO plaintiff must show that his injury was proximately caused by the defendant's misrepresentations. The thinking is, as a matter of simple logic, if a plaintiff did not rely on the defendant's misrepresentations, his injury could not have been proximately caused by them. *See Chisolm v. TranSouth Fin. Corp.,* 95 F.3d 331, 337 (4th Cir.1996) ("[A] showing of reliance on the predicate act of fraud ensures the existence of a 'direct relation between the injury asserted and the injurious conduct alleged.'" (quoting *Caviness v. Derand Res. Corp.,* 983 F.2d 1295, 1305 (4th Cir. 1993))).

The minority view, on the other hand, is grounded in a literal reading of the statute(s). It is espoused by Justice Thomas in *Anza,* 126 S.Ct. at 2007 (Thomas, J., concurring in part and dissenting in part); the First Circuit in *Systems Management, Inc. v. Loiselle,* 303 F.3d 100, 104 (1st Cir.2002); and Judge Gardner of this Court in *Grider v. Keystone Health Plan Central, Inc.,* 2006 WL 3825178, at *22 (E.D.Pa. Dec. 20, 2006). The thinking is, civil RICO can be premised on a violation of the mail fraud statute, and neither the mail fraud statute nor the RICO statute contains a reliance requirement. If Congress wanted to make reliance part of the requirement for a mail fraud predicate, it could have done so in the RICO statute. Congress is presumed to have known that reliance was part of a fraud action at common law, and its failure to include reliance as part of a mail fraud predicate evidences its intent. (Note that the minority view leads to the awkward situation in which a plaintiff, based on identical factual scenar-

ios, could sustain a federal RICO action with a mail fraud predicate but not a state law fraud action. *See Systems Management*, 303 F.3d at 104 ("Perhaps there is some surface incongruity in allowing a civil RICO plaintiff to recover for fraudulent acts even though the same plaintiff could not (for lack of reliance) recover for fraud at common law.").)

The majority view (that reliance is required) and the minority view (that reliance is not required) are not necessarily in conflict, though they are often conflated. *See Summit Props. Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556, 559 n. 14 (5th Cir.2000) (noting the difference). The minority view holds that reliance is not, strictly speaking, an element of a RICO action. (Some other courts admittedly do seem to dispute this point, incorporating the common law fraud requirement of reliance into the mail and wire fraud predicates for RICO. *See Chisolm*, 95 F.3d at 337 (holding that a fraud predicate for a RICO action must be "classic" fraud: "the plaintiff must have justifiably relied, to his detriment, on the defendant's material misrepresentation"); *Pelletier v. Zweifel*, 921 F.2d 1465, 1499 (11th Cir.1991) (holding that mail and wire fraud predicates contain a reliance requirement, "just like common law fraud").). On the other hand, the majority position does not dispute that reliance is not an element of mail fraud, but holds instead that reliance in a civil RICO case with a fraud predicate is a component of proximate causation. Simply put, a misrepresentation cannot "cause" an injury unless one relies on that misrepresentation. Of course, the misrepresentation might be the "but for" cause of the injury, but this does not necessarily make it the proximate or legal cause of the injury. *Cf. Holmes*, 503 U.S. at 265–66, 112 S.Ct. 1311.

■ In the Court's view, the majority position (requiring reliance to demonstrate proximate causation) gets it right. As the Solicitor General phrased it: "It is a matter of basic logic that a misrepresentation cannot cause, much less proximately cause, injury, unless someone relies upon it." Brief for the United States as Amicus Curiae Supporting Respondents, *Bank of China v. NBM L.L.C.*, No. 03–1559, 2005 WL 2875061, at *8 (2005). "Indeed, reliance can be understood as a necessary (but not always sufficient) way of showing causation that is specifically tailored to the fraud context." *Id.* at *13.

The Second, Fourth, Fifth, Sixth, Eighth, and Eleventh Circuits have explicitly held that, consistent with the Supreme Court's direction in *Holmes* that a civil RICO plaintiff alleging mail or wire fraud predicates must show that his injuries were proximately caused by the defendant's scheme to defraud, the plaintiff must show that he detrimentally relied on the defendant's misrepresentations. *See Bank of China v. NBM L.L.C.*, 359 F.3d 171, 176 (2d Cir.2004) ("[W]here mail fraud is the predicate act for a civil RICO claim, the proximate cause element articulated in *Holmes* requires the plaintiff to show 'reasonable reliance.' "), *cert. dismissed,* —— U.S. ——, 126 S.Ct. 675, 163 L.Ed.2d 545 (2005); *Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 337 (4th Cir.1996) ("[W]here the predicate act giving rise to civil liability under RICO was alleged to have been mail fraud, prospective plaintiffs must, in order to demonstrate their standing to sue, plausibly allege both that they detrimentally relied in some way on the fraudulent mailing and that the mailing was a proximate cause of the alleged injury to their business or property." (internal citations and footnote omitted)); *Summit Props. Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556, 562 (5th Cir.2000) ("[W]hen civil RICO damages are sought for injuries re-

sulting from fraud, a general requirement of reliance by the plaintiff is a common-sense liability limitation."); *Cent. Distribs. of Beer, Inc. v. Conn,* 5 F.3d 181, 184 (6th Cir.1993) ("[The plaintiff] cannot maintain a civil RICO claim against these defendants absent evidence that the defendants made misrepresentations or omissions of material fact to [the plaintiff] and evidence that [the plaintiff] relied on those misrepresentations or omissions to its detriment."); *Appletree Square I v. W.R. Grace & Co.,* 29 F.3d 1283, 1286 (8th Cir.1994) ("In order to establish injury to business or property 'by reason of' a predicate act of mail or wire fraud, a plaintiff must establish detrimental reliance on the alleged fraudulent acts."); *Sikes v. Teleline, Inc.,* 281 F.3d 1350, 1360 (11th Cir.2002) ("[W]hen a plaintiff brings a civil RICO case predicated upon mail or wire fraud, he must prove that ... he 'relied to his detriment on misrepresentations made in furtherance of that scheme.'" (quoting *Pelletier v. Zweifel,* 921 F.2d 1465, 1499–1500 (11th Cir.1991))). In addition, most district courts in this district (with *Grier* as the notable exception), have required a showing of reliance (either as a necessary condition of proximate causation or as an element of a mail fraud violation). *See Baker v. Family Credit Counseling Corp.,* 440 F.Supp.2d 392, 410 (E.D.Pa.2006) (Du-Bois, J.); *Cooper v. Broadspire Servs., Inc.,* 2005 WL 1712390, at *8 n. 7 (E.D.Pa. July 20, 2005) (O'Neill, J.); *Smith v. Berg,* 2001 WL 1169106, at *3 (E.D.Pa. Oct. 1, 2001) (O' Neill, J.); *Warden v. McLelland,* 2001 WL 910934, at *10 (E.D.Pa. Aug.8, 2001) (Hutton, J.), *rev'd on other grounds,* 288 F.3d 105 (3d Cir.2002); *Allen Neurosurgical Assocs., Inc. v. Lehigh Valley Health Network,* 2001 WL 41143, at *4 (E.D.Pa. Jan. 18, 2001) (O'Neill, J.); *Rodriguez v. McKinney,* 156 F.R.D. 112, 116 (E.D.Pa.1994) (Brody, J.).

Moreover, there is ample authority for the proposition that a plaintiff who knows a representation to be untrue cannot sustain a civil RICO action predicated on fraud on the basis of the representation. The Third Circuit has framed this proposition as the definition of a misrepresentation itself: there can be no *misrepresentation* if the plaintiff knows the representation to be false.[12] *See Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,* 140 F.3d 494, 528–29 (3d Cir.1998) (holding that the defendant did not violate the mail fraud statute by seeking an audit of the plaintiff because the plaintiff knew the defendant's "true motivation" for seeking the audit); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.,* 90 F.3d 737, 747 (3d Cir.1996) (holding that there could be no mail fraud predicate based on the defendant's "scheme" to charge the plaintiff more than the contract price because the plaintiff admitted that it knew that the defendant was not complying with the contract).

The Third Circuit's position—that there can be no "scheme to defraud" based on a misrepresentation if the plaintiff is aware

---

**12.** The Fifth and Seventh Circuits take a slightly different tack, framing the proposition as one of causation: if the plaintiff knows the representation to be false, the representation cannot be the cause of the plaintiff's injury. *See Sandwich Chef of Texas, Inc. v. Reliance Nat'l Indemn. Ins. Co.,* 319 F.3d 205, 218–19 (5th Cir.2003) ("For a misrepresentation to cause an injury, there must be reliance. Knowledge of the truth defeats a claim of fraud because it eliminates the deceit as the 'but for' cause of the damages."); *Reynolds v. East Dyer Dev. Co.,* 882 F.2d 1249, 1253 (7th Cir.1989) (affirming summary judgment for the defendants in a RICO case predicated on mail and wire fraud because of a lack of causation; "a person who discovers the truth may not claim that a defendant's misrepresentation or omission of information harmed him"). Judge O'Neill captured this nuance in *Allen Neurosurgical Associates,* 2001 WL 41143, at *4 n. 3.

that the representation is false—is more fully explained in *Lundy v. Hochberg*, 79 Fed.Appx. 503, 2003 WL 22426913 (3d Cir. 2003), a non-precedential opinion. Lundy brought a RICO action against his former law partner, Hochberg, alleging that Hochberg violated the mail fraud statute by inducing Lundy to enter into the law partnership. *See Haymond v. Lundy*, 2000 WL 804432, at *2–4 (E.D.Pa. June 22, 2000) (Shapiro, J.). Hochberg's attorney told Lundy's attorney[13] that although Hochberg was under indictment and facing disbarment, Hochberg's legal troubles would be speedily resolved, and with no consequence to Mr. Hochberg of any substance. *Id.* at *5. "Hochberg's alleged scheme could not have been reasonably calculated to deceive persons of ordinary prudence and comprehension; no person of ordinary prudence would have relied on assurances that a pending indictment would have no effect on Hochberg's future ability to practice law. Information covering Hochberg's indictment, sentencing, and suspension/ disbarment was available in accessible publications." *Id.* The Third Circuit upheld the district court's dismissal of the RICO count, holding that there was no "scheme to defraud" because Lundy was aware, or should have been aware, of Hochberg's alleged misrepresentations. *Lundy*, 79 Fed.Appx. at 505.

Analogously, if Plaintiffs here knew they were not liable on the debt (as they allege), then Defendants' representations that Plaintiffs were liable on the debt cannot be a "scheme to defraud" within the meaning of the statute. The representations were unable "deceive persons of ordinary prudence and comprehension," *United States v. Pearlstein*, 576 F.2d 531, 535 (3d Cir.

1978), because the Plaintiffs knew them to be untrue.

Reliance is a necessary component of proximate causation for a civil RICO action predicated on fraud. Plaintiffs here have not alleged—nor could they allege, based on the facts contained in their complaint and RICO Case Statement—that they relied on Defendants' misrepresentations. Therefore, without a showing of proximate causation, Plaintiffs cannot satisfy the RICO standing requirement.

## III. CONCLUSION

Plaintiffs' RICO claim[14] will be dismissed for lack of RICO standing. An appropriate order follows.

## *ORDER*

**AND NOW**, this **28th** day of **March 2007,** for the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that Defendants' motion to dismiss Plaintiffs' RICO count (doc. no. 48) is **GRANTED.**

**AND IT IS SO ORDERED.**

---

13. The court noted that Lundy's attorney's knowledge was imputed to Lundy. *Id.*

14. Lack of RICO standing under § 1964(c) mandates dismissal of both the § 1962(c) and § 1962(d) claims. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 495–96, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).