J-S35031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BRUCE L. WISHNEFSKY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SOMERSET HOSPITAL, PAMELA | : | No. 1750 WDA 2016 |
| REAM, RICHARD FARRELL AND | : | |
| JAWAD A. SALAMEH, M.D. | : | |

Appeal from the Order Entered March 26, 2012
In the Court of Common Pleas of Somerset County
Civil Division at No(s):  565 Civil 2011

BEFORE:   LAZARUS, RANSOM, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED AUGUST 9, 2017**

Appellant Bruce L. Wishnefsky appeals the order entered on March 23, 2012 by the Court of Common Pleas of Somerset County, granting the preliminary objections of Appellee Dr. Jawad A. Salameh, M.D. and dismissing Appellant's case against him.

Appellant, an inmate at the State Correctional Institution at Laurel Highlands, filed a related legal action in federal court in June 2008 against Appellee Dr. Jawad A. Salameh, M.D., in connection with the medical care he received at Somerset Hospital in May 2007 while Dr. Salameh was the attending physician.  In this lawsuit, Appellant claimed Dr. Salameh violated

_____

[*] Former Justice specially assigned to the Superior Court.

the Eighth Amendment of the United States Constitution by exhibiting extreme indifference to Appellant's serious medical needs. ***See Wishnefsky v. Salameh***, 445 Fed.Appx. 545 (3rd Cir. 2011) (unpublished decision). The federal magistrate recommended partial dismissal of Appellant's claims for failure to state a claim upon which relief could be granted and subsequently recommended the grant of summary judgment on Appellant's remaining claim. The United States District Court for the Western District of Pennsylvania adopted the report and recommendation of the magistrate and the Court of Appeals for the Third Circuit affirmed this decision.

In the course of his federal litigation, Appellant requested his medical records from Somerset Hospital. Appellant alleges that the hospital sent him an incomplete record, as he did not receive any physician's notes from May 24 and May 25, 2007. Once Appellant provided Dr. Salameh a written release to obtain his medical records, Dr. Salameh made his own request for Appellant's medical records. Counsel for Dr. Salameh received an invoice for $118.41 for 121 pages of medical records. Dr. Salameh sent a copy of the records to Appellant.

When Appellant received these copies, he accused Dr. Salameh of providing only a portion of his medical records. Appellant asserted that given the invoice price, he should have received 160 pages of records pursuant to the pricing set forth in the Medical Records Act (42 Pa.C.S.A. § 6152(a)(2)); Appellant complained that he only received 121 pages of records. Counsel for Dr. Salameh suggested that if Appellant took issue with

the completeness of his medical records, he should correspond with the hospital directly.

Appellant then subpoenaed his medical records from Somerset Hospital, requesting all physician's notes, progress notes, and nursing flow sheets from his May 2007 admission. Once the hospital invoiced Appellant $89.20 for 64 pages of medical records, Appellant sent the hospital a check for the stated fee. Appellant complained to the hospital that he only received 60 pages of medical records and alleged that certain nursing notes were missing. Pamela Ream, the Risk Management Director at Somerset Hospital, asked Appellant to return the records so that the hospital could determine which pages were missing and to provide the missing pages. Ream asserted that the discrepancy in the number of pages was caused by a computer system upgrade that changed the way the documents were stored.

On August 3, 2011, Appellant filed his initial *pro se* complaint in the Court of Common Pleas of Somerset County against Appellee Dr. Salameh, Somerset Hospital, Ream, and Michael Farrell, the CEO of Somerset Hospital (collectively "the defendants"). Appellant raised claims sounding in breach of contract, the Unfair Trade Practices Consumer Protection Law (73 P.S. § 201-3), and the federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961-1968).[1] Appellant argued that the defendants conspired

_____

[1] We observe that Appellant, a former paralegal, has filed other lawsuits attempting to raise frivolous claims under RICO. ***See Wishnefsky v.***
*(Footnote Continued Next Page)*

- 3 -

together to deprive him of his complete medical record and overcharged him for the copies he did not receive.[2]  Appellant asserted that the defendants committed multiple acts of mail fraud in mailing only portions of his medical records, intending to mislead him into believing he had received his complete record.  Appellant also alleged that the absence of certain records prevented him from successfully litigating his federal action. Appellant was allowed to proceed *in forma pauperis*.

After the defendants filed preliminary objections, Appellant filed an Amended Complaint on September 20, 2011.  The defendants again filed preliminary objections.  Appellant then filed a Second Amended Complaint on October 11, 2011.  On March 26, 2012, the trial court entered an order and an opinion sustaining the preliminary objections of Appellee Dr. Salameh and Appellee Farrell and dismissing them from the case.

Appellant continued his case against the remaining defendants, Ream and Somerset Hospital through an arbitration hearing, from which Appellant appealed to the trial court.  After the parties engaged in discovery, the

*(Footnote Continued)*

**Carroll**, 44 Fed.Appx. 581 (3rd Cir. 2002) (unpublished decision) (affirming the dismissal of Appellant's civil RICO claim for failing to state a claim upon which relief can be granted); **Wishnefsky v. Evans**, 155 MDA 2015 (Pa.Super. 2015) (unpublished memorandum) (affirming the dismissal of Appellant's civil RICO claim as "meritless nuisance litigation" and concluding that the trial court did not err in denying Appellant leave to file a seventh amended complaint).
[2] Appellant also claimed that the copies of his medical records should have been certified pursuant to the Pennsylvania Medical Records Act.

parties filed partial summary judgment motions. On February 25, 2014, the trial court granted Ream and Somerset Hospital's partial motion for summary judgment and dismissed the RICO charge. On January 23, 2015, the trial court denied Appellant's motion for summary judgment.

On October 12, 2015, Appellant filed a praecipe to discontinue the case against the remaining defendants, Ream and Somerset Hospital. The document was forwarded with letterhead from counsel for Ream and Somerset Hospital and a $12.00 check from counsel to cover the filing costs. On November 14, 2015, Appellant filed a notice of appeal, seeking to challenge the trial court's previous entry of summary judgment against Dr. Salameh.

As an initial matter, we must determine whether this appeal is properly before this Court. An appeal may only be taken from a final order, that is, an order which disposes of all claims and all parties. Pa.R.A.P. 341. This Court has held that "[i]t is well settled that the interlocutory orders dismissing various parties piecemeal from a lawsuit may not be appealed until the case is concluded as to the final remaining party and the case is therefore resolved as to all parties and all claims." *Burkey v. CCX, Inc.*, 106 A.3d 736, 738 (Pa.Super. 2014).

However, this Court reasoned that "a case may be resolved against the final defendant by other than an order of court, as happens where the case against the sole remaining defendant is discontinued or settled, and a docket entry to the effect that the claim was discontinued or settled may serve to

- 5 -

render the prior judgments final and appealable." ***Burkey***, 106 A.3d at 739.

The Court noted "[Pennsylvania Rule of Civil Procedure 229] requires court approval only where fewer than all defendants are being dismissed and there is not written consent from all parties." ***Id***. at 741. In ***Burkey***, this Court held that Burkey's praecipe dismissing the remaining defendant in the lawsuit and the docket entry noting this dismissal caused the trial court's prior orders to become final on the date, even though no court order had been entered finalizing the dismissal of the case.

Thus, in this case, Appellant's October 12, 2015 praecipe to dismiss the remaining defendants, Ream and Somerset Hospital, along with the corresponding notation on the docket rendered all of the trial court's prior judgments to be final and appealable. Appellant filed a timely notice of appeal within thirty days of this date.[3] ***See*** Pa.R.A.P. 903(a) (providing that

---

[3] The thirty-day period to file an appeal following October 12, 2015 dismissal of all parties from this lawsuit ended on Friday, November 11, 2015, on which the courts were closed for Veterans' Day. Appellant had until the next business day to file his appeal. ***See*** Pa.R.C.P. 106(b) ("Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation."). Appellant's notice of appeal, which was formally docketed as filed on Monday, November 14, 2015 is timely filed.

Moreover, we deem Appellant to have filed his notice of appeal several days earlier on November 8, 2015, as Appellant provided a cash slip with his docketing statement indicating that he mailed the notice of appeal on that date. As Appellant is incarcerated, he is entitled to the application of the "prisoner mailbox rule." ***See Commonwealth v. Jones***, 700 A.2d 423, 426 (Pa. 1997) (an appeal by a *pro se* prisoner is deemed filed on the date the
*(Footnote Continued Next Page)*

a "notice of appeal … shall be filed within 30 days after the entry of the order from which the appeal is taken").

Appellant limits his appeal to challenge the trial court's decision to grant Appellee Dr. Salameh's preliminary objection to Appellant's RICO claim in the nature of a demurrer.[4]  In reviewing a challenge to the trial court's decision to grant preliminary objections, our standard of review is as follows:

> our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law.  When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint.  When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom.  Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief.  If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*(Footnote Continued)* ───────────

prisoner "deposits the appeal with prison authority and/or places it in the prison mailbox").

[4] Although Appellant appeals the trial court's order granting the preliminary objections of both Dr. Salameh and Farrell, the CEO of Somerset Hospital, Appellant does not argue in his appellate brief that the dismissal of Farrell from the lawsuit was improper.  Therefore, we find this issue to be waived for lack of development.  ***Commonwealth v. Treiber***, 632 Pa. 449, 488, 121 A.3d 435, 458 (2015) (claims containing bald allegations and no analysis were undeveloped for appellate review).

*Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa.Super. 2011) (quoting *Haun v. Community Health Systems, Inc.,* 14 A.3d 120, 123 (Pa.Super. 2011)).

The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, provides a private right of action for treble damages to an individual who has been "injured in his business or property by reason of" the defendant's "racketeering activities" in violation of RICO's substantive provisions. 18 U.S.C. § 1964(c). Section 1962(c) provides that it is "unlawful for any person employed by or associated with" an enterprise engaged in or affecting interstate or foreign commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). State and federal courts exercise concurrent jurisdiction over civil actions brought under the Act. *Drohan v. Sorbus, Inc.*, 584 A.2d 964, 968 (Pa.Super. 1990) (citing *Tafflin v. Levitt,* 493 U.S. 455, 467, 110 S.Ct. 792, 799, 107 L.Ed.2d 887 (1990)).

The definition of the term "racketeering activity" includes various state and federal offenses including mail fraud under 18 U.S.C. § 1341. Appellant claims that the predicate RICO acts of mail fraud were committed when Dr. Salameh allegedly directed hospital personnel to withhold portions of Appellant's medical records from him to mislead him to believe he had received his complete medical record. To prove a mail fraud violation, a plaintiff must "establish the existence of a fraudulent scheme and a mailing

in furtherance of this scheme." ***Lundy v. Catholic Health Sys. of Long Island Inc.***, 711 F.3d 106, 119 (2nd Cir. 2013).

> The mail fraud statute prohibits any person from knowingly causing the use of the mails "for the purpose of executing" any "scheme or artifice to defraud." 18 U.S.C.A. § 1341 (Supp. 1990). The actual violation is the mailing, although the mailing must relate to the underlying fraudulent scheme. Moreover, each mailing that is "incident to an essential part of the scheme" constitutes a new violation. ***Pereira v. United States***, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954). The mailing need not contain any misrepresentations. Rather, "'innocent' mailings—ones that contain no false information—may supply the mailing element." ***Schmuck v. United States***, 489 U.S. 705, 715, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989).

***Kehr Packages, Inc. v. Fidelcor, Inc.***, 926 F.2d 1406, 1413–14 (3d Cir. 1991).

However, we note that even if we accept all of Appellant's allegations in his Second Amended Complaint as true, he has not sufficiently alleged that he has been injured by Dr. Salameh's alleged RICO violation and thus, has no standing to bring the RICO claim. To have standing under RICO, (1) a plaintiff's 'business or property' must have been 'injured' (2) 'by reason of' the defendant's RICO violation." 18 U.S.C. § 1964(c); ***Sedima, S.P.R.L. v. Imrex Co.,*** 473 U.S. 479, 495, 105 S.Ct. 3275, 3284, 87 L.Ed.2d 346 (1985) (providing that "a RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by [reason of] the conduct constituting the violation"). The United States Supreme Court has indicated that the "by reason of" language of the statute requires a RICO plaintiff to establish that the defendants' violation is the

proximate cause of any injury. ***Holmes v. Securities Investor Protection Corp.,*** 503 U.S. 258, 268, 112 S.Ct. 1311, 1319, 117 L.Ed.2d 532, 544 (1992).

Appellant argues that he was injured in his property as required by the RICO statute as he was charged $89.20 for medical records that he claims he should have received without any payment through a subpoena in his federal litigation.[5]  While we acknowledge case law exists that allows RICO recovery for a plaintiff's out-of-pocket expenses, the costs Appellant claims constitute an actionable injury under RICO must have been proximately caused by the defendant's racketeering activities.

In similar circumstances, in ***Walter v. Palisades Collection, LLC***, 480 F.Supp.2d 797, 803–804 (E.D.Pa. 2007), the U.S. District Court for the Eastern District of Pennsylvania reasoned that it would be "illogical" to deem a plaintiff to have standing under RICO based on the alleged "injury" incurred by the plaintiff in paying an attorney to initiate the RICO action.[6]

_____

[5] In his Second Amended Complaint, Appellant also argued that he was injured by the defendants' mailing of incomplete medical records as he was unable to successfully litigate his federal case.  We note that even assuming that this constituted an actionable injury under RICO, Appellant never explained how he was prejudiced by the absence of the allegedly missing records.  Appellant's federal lawsuit was dismissed by the district court for Appellant's failure to exhaust his administrative remedies.  The Third Circuit affirmed the dismissal, finding Appellant's pleadings and evidentiary submissions did not support his allegations that Dr. Salameh violated his constitutional rights in treating him.

[6] We acknowledge that "[a]lthough we are not bound by the holdings of federal district courts, we may utilize the reasoning in these decisions to the
*(Footnote Continued Next Page)*

***Walter***, 480 F. Supp. 2d at 805. The District Court emphasized that "RICO's injury requirement would be a nullity if paying an attorney to initiate the RICO action itself sufficed as a damage." ***Id.***

Similarly, in this case, any costs incurred by Appellant to litigate the instant case cannot form the basis for RICO liability as the alleged racketeering activity was not the proximate cause of these expenses. On his own initiative, Appellant incurred these expenses in deciding to pursue this action to seek redress for the defendants' alleged racketeering activities. As a result, Appellant does not have standing to pursue this action as he has not alleged that he was injured in his business or property by reason of the conduct constituting the alleged RICO violation.

Moreover, even if Appellant had standing in this case, Appellant failed to plead his mail fraud claim with particularity to state a claim for relief. RICO allegations sounding in fraud are subject to heightened pleading standards, in which the "circumstances constituting fraud or mistake shall be stated with particularity." ***Id***.at 802. In the context of RICO mail fraud allegations, this means that the complaint must "identify the purpose of the mailing within the defendant's fraudulent scheme and specify the fraudulent statement, the time, place, and speaker and content of the alleged

---

*(Footnote Continued)*

extent we find them persuasive." ***N. Forests II, Inc. v. Keta Realty Co.***, 130 A.3d 19, 36 (Pa.Super. 2015).

misrepresentation." *Annulli v. Panikkar*, 200 F.3d 189, 201 n. 10 (3rd Cir. 1999).

In his Second Amended Complaint, Appellant does not state with particularity how Dr. Salameh was involved in the defendants' alleged scheme to defraud Appellant by providing him with an incomplete record. We agree with the trial court's finding that Appellant's mere reference to the fact that Dr. Salameh was Chair of the Internal Medicine Department was insufficient to make out a RICO cause against him in his individual capacity.

Accordingly, we affirm the trial court's decision to grant Dr. Salameh's preliminary objection to Appellant's Second Amended Complaint.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/2017

- 12 -