**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1680
_____

BRUCE L. WISHNEFSKY,

Appellant

v.

JAWAD SALAMEH, M.D.

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 3-08-cv-00128)
District Judge:  Honorable Kim R. Gibson

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 1, 2011
Before:  SLOVITER, FISHER and WEIS, Circuit Judges
(Opinion filed :  September 15, 2011)
_____

OPINION
_____

PER CURIAM.

Bruce Wishnefsky, a prisoner of the Commonwealth of Pennsylvania proceeding pro se and in forma pauperis, timely appeals from orders denying class certification, dismissing claims, granting summary judgment in favor of the defendants, and denying a Rule 59(e) motion.  We will affirm.

1

**I.**

Wishnefsky accused the medical director of SCI Laurel Highlands, Dr. Salameh, of violating the Eighth Amendment by exhibiting deliberate indifference, in both supervisory and personal roles, to Wishnefsky's serious medical needs. In May 2007, Wishnefsky—who suffers from multiple medical ailments, including Parkinson's and benign prostatic hyperplasia[1]—was admitted to the long-term-care unit in the prison's medical ward. Over the next few days, he presented with several health problems, which he alleges were inadequately treated by Dr. Salameh and other medical staff members. These errors, exacerbated by several "policies" that included insufficient levels of lab staffing, allegedly led to extended catheterization, a urinary-tract infection, and possible internal injury, along with an extended period of humiliating incontinence.

Wishnefsky filed suit in June 2008, charging the above constitutional harm (along with a state-law claim of medical battery) and requesting that the District Court certify a class of inmates who had "been subject to deliberate indifference, to the extent they have been denied access to an acute[-]care medical facility capable of providing appropriate treatment when they have an acute [serious medical need], or to the extent they have been made to use unneeded Foley[2] catheters." See Am. Compl. ¶ 35, ECF No.

---

[1] A "progressive enlargement of the prostate due to [an increase in size] of both glandular and stromal components . . . sometimes causing obstructive or irritative symptoms." Stedman's Medical Dictionary 925 (28th ed. 2006).

[2] A urethral catheter. Stedman's Medical Dictionary 326–27 (28th ed. 2006).

11. He filed a separate Motion for Class Certification, emphasizing that, as the representative party, he would "fairly and adequately assert and protect the interests of the class since his claims are typical of the class, in that he almost bled to death when Dr. Salameh did not promptly transfer him to an acute care facility and when Dr. Salameh continued [his] Foley catheter after it was no longer needed." Pl's Mot. for Class Cert. ¶ 4, ECF No. 12. In support of his suitability, Wishnefsky pointed to his significant legal experience: completing one year of law school and working for fifteen years as a paralegal, in which capacity he dealt with "complex civil litigation, including class actions." Id. ¶ 5.

The complaint and certification motion were referred to a Magistrate Judge, who denied the motion to certify a class, entering a text-only order that found Wishnefsky to be an unsuitable class representative because "he is without sufficient legal education." Nothing in the order indicated that Wishnefsky was informed of his ability to appeal or object to the adverse ruling.

Having suffered the loss of his class-related claims, Wishnefsky prepared a second amended complaint, levying several allegations against Dr. Salameh, including: that the care he gave his inmates patients was "substantially inferior" to the care given to private patients, Second Am. Compl. ¶ 6.3, ECF No. 22; that he "routinely fail[ed]" to document procedures, in order to avoid lawsuits, ¶ 6.4; and that his staff catheterized patients for pure "convenience," ¶ 11. Wishnefsky coalesced his remaining claims into

3

three "counts": 1) the delay in transferring him from the long-term care unit to Somerset Hospital, after complications were evident, was a product of "deliberate and callous indifference" to his medical needs; 2) Dr. Salameh refused to see him from May 26, 2007, until June 25, 2007, refused to prescribe medication that would allow his catheter to be removed, and "lied" to another physician, telling him that Wishnefsky could not void without a catheter "even though Dr. Salameh knew that was not true," ¶¶ 52–53; and 3) the aforementioned state-law battery claim, related to his extended catheterization.

Salameh moved to dismiss, arguing that Wishnefsky had failed to state a claim upon which relief could be granted. In opposition, Wishnefsky described the "gist" of his complaint as his disagreement "with the potentially fatal delay in transferring him to Somerset Hospital when he had lost five units of blood, from which blood loss he definitely suffered encephalopathy and possibly stroke, and the failure to restart Hytrin,[3] which resulted in his being unable [to] urinate, and that defendant's failing to remove the Foley Catheter resulted in depression, urinary tract infection, fever and severe shaking . . . and the embarrassing need to wear diapers." Br. in Opp. to Def's Mot. to Dismiss 12, ECF No. 31. He also argued that "the consultations defendant ordered at the hospital, to locate the source of plaintiff's severe blood loss, **should** have been made at least 8 days earlier," id. at 12 (emphasis added), and that it was reasonable to infer that these delays derived from non-medical, cost-cutting motives, id. at 13–14. Lastly, Wishnefsky

---

[3] A medicine used to treat the symptoms of an enlarged prostate. See Terazosin, PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000933/ (last visited August 1, 2011).

accused Salameh of "ignoring the universally accepted teaching against prolonged use of Foley Catheters." Id. at 15.

The Magistrate Judge recommended partial dismissal. With regard to delayed medical treatment, although Wishnefsky "did receive at least some treatment during the time period in question," his "factual allegations regarding the delay of his blood test and subsequent admission to Somerset Hospital between May 17, 2007, and May 22, 2007, if proven true, could support the conclusion that Defendant's alleged policies constituted deliberate indifference." Wishnefsky v. Salameh, No. 08-128J, 2009 U.S. Dist. LEXIS 124600, at *15, 19 (W.D. Pa. Dec. 21, 2009). By contrast, complaints of extended catheterization were more akin to a dispute over proper treatment than to neglect or a failure to administer treatment, and hence failed to state a constitutional claim. Id. at *23. As she was recommending dismissal of the catheter-related constitutional claim, the Magistrate Judge further "recommend[ed] that supplemental jurisdiction not be exercised over Plaintiff's State law claim." Id. at *25. After de novo review, the District Court agreed See Order, ECF No. 34.

Thereafter, discovery commenced, and both parties moved for summary judgment. The Magistrate Judge recommended that the District Court grant summary judgment in favor of the defendant, citing Wishnefsky's failure to properly exhaust the remaining claims,[4] which were now procedurally defaulted; the District Court approved

---

[4] See 42 U.S.C. § 1997e(a).

5

this recommendation over Wishnefsky's objections.  <u>Wishnefsky v. Salameh</u>, No. 08-128J, 2011 U.S. Dist. LEXIS 9409, at \*1–2 (W.D. Pa. Feb. 1, 2011).  After his timely motion under Rule 59(e) was denied, Wishnefsky appealed.

## III.

We have jurisdiction under 28 U.S.C. § 1291, exercising plenary review over both motions to dismiss and motions for summary judgment.  <u>Gallo v. City of Phila.</u>, 161 F.3d 217, 221 (3d Cir. 1998).[5]  In reviewing the motion to dismiss, we accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in Wishnefsky's favor, <u>Capogrosso v. Sup. Ct. of N.J.</u>, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam); in reviewing the order granting summary judgment, we apply the same standard the District Court applied, <u>Spence v. ESAB Group, Inc.</u>, 623 F.3d 212, 216 (3d Cir. 2010); <u>see also</u> Fed. R. Civ. P. 56(a) (summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").[6]  We apply an abuse-of-discretion analysis to the District Court's denial of a motion for reconsideration, <u>see</u> <u>Cureton v. NCAA</u>, 252 F.3d 267, 272 (3d Cir. 2001), and to its order declining to exercise supplemental jurisdiction, <u>see</u> <u>Anderson v.</u>

---

[5] Although Wishnefsky failed to object to the first Report and Recommendation, the District Court's de novo review rendered this failure irrelevant.  <u>Henderson v. Carlson</u>, 812 F.2d 874, 878 n.4 (3d Cir. 1987).

[6] We cite to the new revision of Rule 56 that was in effect at the time of the District Court's decision.  While the Magistrate Judge relied on the older revision, the differences are mostly cosmetic and do not affect the substantive standard for granting summary judgment.  <u>See</u> Fed. R. Civ. P. 56 advisory committee's 2010 note.

Wachovia Mortg. Corp., 621 F.3d 261, 283 (3d Cir. 2010) (considering "whether the dismissal of the pendent claims best serves the principles of judicial economy, convenience, fairness, and comity"). We may affirm for any reason supported by the record. Nicini v. Morra, 212 F.3d 798, 805 (3d Cir. 2000)

**IV.**

a) Class Action Request

We assume without deciding that a Magistrate Judge has authority to rule on a class action request because we dispose of this appeal on other grounds.

b) Dismissed Claims

The District Court did not err when it dismissed Wishnefsky's catheterization claims. Wishnefsky failed to show the "culpable state of mind" required to demonstrate an Eighth Amendment violation. See Hudson v. McMillian, 503 U.S. 1, 20 (1992). While he vehemently disputes the appropriateness of the care he received, finding it to have been uncomfortable and possibly indicative of negligence, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." United States ex rel. Walker v. Fayette Cnty., 599 F. 2d 573, 575 n.2 (3d Cir. 1979); see also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

c) Summary Judgment

The District Court determined that Wishnefsky had failed to properly exhaust his final claim against Salameh because he failed to mention Salameh in the grievance he filed, in contravention of prison policy in place at the time and in accordance with our holding in Spruill v. Gillis, 372 F.3d 218, 234 (3d Cir. 2004). We conclude, in any event, that no genuine issue of material fact existed to defeat a grant of summary judgment for Salameh on the merits.

Specifically, we detect no sign that Salameh possessed the mental state required for liability under the Eighth Amendment; instead, evidence suggests that his actions may, at worst, have amounted to negligence. This is quickly evident from Wishnefsky's evidentiary submissions, which are replete with second-guessing, appeals to "ideal" medical procedures, attacks on the margins of prison policies, and testimony on what Salameh "should" have done at any given stage of the process.[7] This, without more,

---

[7] Wishnefsky provided numerous affidavits, in which ostensible medical professionals of uncertain backgrounds and origins opined, from a review of Wishnefsky's medical records, that Salameh "created a substantial risk of serious harm" through his activities. See, e.g., Aff. Of Charles A. Sullivan, App'x 1, Ex. T ¶ 19 ("It is my opinion, to a high degree of certainty, that Dr. Salameh created a substantial risk of serious harm to the patients at SCI Laurel Highlands for whom he is the Medical Director, when he fail[ed] to have written policies and/or procedures in place requiring that when an undiagnosed patient presents with dizziness, orthostatic hypotension and positive occult blood, that the patient be taken to the ER at Somerset Hospital for evaluation."), ECF No. 61. In perhaps the most curious example, Wishnefsky included an affidavit entitled "Opinion on Causation" from one Charlotte Basenfelder, R.N, who appeared elsewhere in his submissions as both a "Medical Billing Advocate" and as a member of an organization named "Women Against Urinary Catheter Abuse," a not-for-profit located in Lansdowne, Pennsylvania. Both Wishnefsky's motion for summary judgment and his statement of facts contained extended passages of medical jargon and various assertions that Salameh "should have" done something else, often based on the aforementioned affidavits.

cannot suffice to show a violation of the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). And while Wishnefsky argues in the alternative that Salameh and his physicians opted for "an easier and less efficacious treatment of his condition," which could have been constitutionally impermissible, see Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), those claims are factually unsupported. See Fed. R. Civ. P. 56(c)(1), (e).

d) Motion for Reconsideration

For the abovementioned reasons, the District Court did not abuse its discretion in denying Wishnefsly's 59(e) motion. See Cureton v. NCAA, 252 F.3d 267, 272 (3d Cir. 2001).

e) Supplemental Jurisdiction

The District Court did not err in declining to exercise supplemental jurisdiction over the relevant state-law claims. Regardless, Wishnefsky has not raised this issue in his brief; accordingly, it is waived. Steven I. v. Cent. Bucks Sch. Dist., 618 F.3d 411, 415 n.8 (3d Cir. 2010).

## V.

For the foregoing reasons, we will affirm the judgment of the District Court on all grounds.